## 57496. BANKS v. DALBEY.

Smith, Judge.

In this action brought by appellant Banks for medical malpractice, the trial court granted appellee Dalbey's motion for summary judgment. The motion was founded upon the alleged late filing of the suit under the applicable statute of limitations. We reverse.

On August 24, 1974, appellant cut his hand on a ceramic vase, and on that date appellee, a medical doctor, treated appellant and attempted to remove glass from his wound. Although appellant continued to experience some residual pain, the cut healed and the treatment appeared successful. However, X-rays taken in June or July of 1976 revealed foreign objects in appellant's hand. When those objects were removed, on April 19, 1977, they were discovered to be particles of ceramic glass. Appellant filed this suit on April 29, 1977.

Contrary to the trial court's conclusion, appellant timely filed his lawsuit. The statutes which are here involved provide: "Except as otherwise provided in this Chapter, an action for medical malpractice shall be brought within two years after the date on which the negligent or wrongful act or omission occurred." (Code § 3-1102.) "None of the limitations of section 3-1102 shall apply where a foreign object has been left in a patient's body, but an action shall then be brought within one year after such negligent or wrongful act or omission is discovered. For purposes of this section, 'foreign object' shall not include a chemical compound, fixation device or prosthetic aid or device." (Code § 3-1103.) This is only the second time a malpractice suit has been before this court dealing with the interpretation of Code § 3-1103. In the

case of *Clark v. Memorial Hospital of Bainbridge,* 145 Ga. App. 305 (243 SE2d 695) (1978), this court unnecessarily attempted to ascertain the legislature's intent in enacting Code § 3-1103. The *Clark* case, supra, turned upon the point that the statute of limitations had run under both Code § 3-1102 and Code § 3-1103, thereby rendering any further interpretation unnecessary to the opinion. In light of this, our holding in the *Clark* case, that "Code Ann. § 3-1103, [supra,] refers to objects placed in the patient's body during some medical procedure" is dictum and therefore not a binding precedent.

The holding of *Parker v. Vaughan,* 124 Ga. App. 300 (183 SE2d 605) (1971), that Code § 3-1004 began to run from the time the patient has knowledge or through the exercise of ordinary care should have learned of the existence of the continuing tort, is not limited to causes of action in which a surgeon negligently fails to remove an object which he placed in his patient's body. The *Parker* case, at p. 303, held that it was "limited to causes of action in which a surgeon negligently *leaves* a foreign object in the body of the patient." (Emphasis supplied.)

Black's Law Dictionary defines "leave": "to allow or cause to remain; to let remain unmoved or undone; to refrain from or neglect taking, doing, or changing." It is clear then that when the *Parker* case, supra, held that it was dealing with foreign objects negligently left in the body, it covered either situation: where it was left by the doctor in the process of an operation or where it was left by the doctor in the process of treatment where the foreign object was in the body from some cause other than that of the treating physician.

In view of the law that existed in this state as of 1976, by virtue of the *Parker* case, supra, it is clear that the legislature intended that Code § 3-1103, supra, should apply in either of the following cases, to wit:

(a) Where the foreign object was both placed in the body and left there by the person treating the injury, or

(b) Where a foreign object from some source other than the person treating the injury was left in the body by that person.

Code § 3-1103 supports (b) above when it says, "[A]fter such negligent or wrongful act or omission is

discovered." (Emphasis supplied.) Webster's Dictionary defines omission as "A thing which is omitted or left undone." Clearly when the person leaves the foreign object in the patient's body, regardless of how it got there, that person has "left undone" what he was professionally trained to do. Hence he is negligent by an act of omission, an act "left undone," if you please.

Certainly, when Dalbey treated Banks for the glass in his hand, Banks expected the foreign objects to be removed, irrespective of how they got there. That was the purpose of the treatment, and when Dalbey failed to remove the glass, he left a foreign object in Banks' body. The fact that he did not place it there makes no difference.

*Judgment reversed. Quillian, P. J., McMurray, P. J., Banke and Carley, JJ., concur. Deen, C. J., Shulman, Birdsong and Underwood, JJ., dissent.*

SUBMITTED MARCH 13, 1979 — DECIDED JULY 16, 1979 —

*E. Graydon Shuford,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Robert G. Tanner, Sidney F. Wheeler* for appellee.

DEEN, Chief Judge, dissenting.

The plaintiff in this case has sustained a wide variety of separate traumatic injuries. A piece of metal was wedged in his cornea on one occasion; over 200 stitches were required from an automobile accident on another occasion, after which he removed the sutures himself within 7 to 9 days after he was stitched up; and in the case sub judice pieces of glass from a broken vase were wedged in his hand.

In his own words: "Q. Have you ever been treated on an outpatient basis at a hospital prior to August of '74? A. Yes. Q. For what problem? A. In Houston. I had a splinter or piece of metal wedged in my, or lodged in my cornea. And had to have that removed. I — I guess I've had a normal amount of cuts and abrasions and Tetanus shots that have been required in the course of — I don't really

recall specific instances. . . Q. When you were — What type psychology did you study? A. Behavioral psychology. Q. Did that involve running rats — A. Yes. Q. Did you have occasion to perform any sort of little procedure on a rat where you had to use sutures? A. I have assisted in surgery on cats — Q. Okay. A. — in physiological psychology. Q. Did you have occasion to do any suturing? A. No. Q. Had you seen any suturing done? A. Yes. Q. How much suturing had you seen done? A. I don't know. I've seen, I guess, quite a bit on myself. I had a couple of hundred stitches in me from my automobile accident, as I say. Referring back to the physiological lab situation and surgery, I'd seen a number of — of implantations in cranial areas and — Q. Had you ever seen any sutures removed during those of — experiments or — A. I have seen them removed subsequent to those, yes, surgery. Q. So you weren't afraid to take out the suture yourself? A. No. Q. And you didn't feel it necessary to see a doctor for that? A. No. Q. When did you take them out? A. I guess about seven to nine days after the — the time I had it stitched up. Q. When you took the sutures out was the wound closed and healed? A. Yes."

We are bound by the whole court case of *Parker v. Vaughan,* 124 Ga. App. 300, 303 (183 SE2d 605), specially limiting the notion of a continuing medical tort in cases where the surgeon affirmatively inserts the foreign body, such as in this case, a steel arterial clamp, without later removing this object from the body. "We specifically wish to make it clear that our holding here is limited to causes of action in which a surgeon negligently leaves a foreign object in the body of his patient."

To extend and broaden this one exception and make it applicable to the statute of limitations set forth in Code Ann. § 3-1103 would justify subjecting this court to a double standard criticism espoused by Judge Eberhardt and Judge, now Justice Hall, in the dissent on page 304: "I am unable to justify the establishment of one standard as to the commencement of the running of the statute of limitation in a malpractice action against an attorney and another standard to be applied to a malpractice action against a doctor."

It is apparent that Code Ann. § 3-1103 codified this

single exception announced in the majority opinion in this case. In my opinion, we should affirm this sole limitation and not permit erosion in this area toward one of imposing total liability.

Assuming arguendo that this court's ratio decidendi in *Clark v. Memorial Hospital of Bainbridge,* 145 Ga. App. 305 (243 SE2d 695), should have excluded ascertainment of the legislature's intent in enacting Code § 3-1103, relating to a piece of metal in the leg of the injured party, nevertheless, even if dictum, the rule evolved therein appears to be consistent with *Parker,* supra, with the newly adopted Code section, as well as with sound principles of responsibility relating to equity and justice.

It is one thing to place a substantial burden on a surgeon who has made an incision and thereafter affirmatively left a sponge or clamp in the body of his patient after stitching up the wound. This is understandably a reasonable inception of a stronger unlimited liability concept on the medical practitioner to the extent it creates a continuing tort and tolls the statute of limitations until the object is discovered. It may be argued that this is a use of the doctrine of res ipsa loquitur. It is quite different to implant and extend this stronger unlimited liability concept to include literally thousands of medical practitioners who everyday deal with cuts, bruises and stitches. This would require a monumental new medical approach of meticulous, detailed documentation and thorough expensive and extensive x-rays of the precise area of treatment and possibly all surrounding, peripheral and distant parts of the body in which some object "may be left." This singles out and punishes the medical profession with an unequal unconscionable burden of potential liability while mistakes and things undone by the legal and other professions would be covered, protected and insulated through the passage of time.

Designation of the extent as to medical liability ultimately becomes a philosophical question based either on consideration of first principles of formalism or pragmatic utilitarianistic realism. Philosopher R. J. Rushdoony provides distinctions between three concepts of medical liability: total liability, unlimited liability and

limited liability. He states: *"Total liability* is an untenable idea for man. It ascribes to man powers which are beyond man, and it places an impossible burden on medical practice. . . The idea of *unlimited liability* means that I am completely responsible where I have responsibilities, to the reasonable limit of human ability. Thus, if I, through my negligence, am responsible for an accident, I am fully liable for the accident I have caused. . . It is significant that, at the same time that malpractice suits have arisen, in the 1930's and especially since 1950, environmentalism has also flourished. Environmentalism holds that we are a product of our environment; if Johnny is delinquent, his home, community, church, and school are to blame. Man is assumed to be a product instead of a producer, and responsibility is accordingly shifted from the individual to the environment . . . As areas of the United States most readily adopted in education and everyday life the environmentalist philosophy, they also adopted a *limited liability* philosophy, and a proneness to malpractice suits set in. Environmentalism means at best limited liability, and, in its extreme no liability by the individual: someone else or something else, the environment as a totality is to blame. The more environmentalism flourishes, the more readily total liability is ascribed to the environment."[1]

"Environmentalism" and "determinism" eliminate the "free will" concept of responsibility for acts of right and wrong — fault and no fault. "Psychiatrists advance the theory of pre-determined choice of the individual — called 'determinism.' " *Shirley v. State,* 149 Ga. App. 194, 201 (253 SE2d 787). Ironically plaintiff's profession is physiological behavioral psychology. The behaviorist believes in controlling the individual by scientifically controlling his environment, by rote in the same manner as Pavlov's dogs. "Basic research in the science of behavior is essentially manipulative; the experimenter arranges conditions under which a subject behaves in a

---

[1]R. J. Rushdoony, "The Meaning of Liability," Medical Report No. 3 (Chalcedon, P. O. Box 158, Vallecito, Calif. 95251).

given way, and in doing so he controls behavior."[2] Leading behaviorial psychologist B. F. Skinner has stated: "The control of behavior is an intricate science into which the average mother could not be initiated without years of training. . . Home is not the place to raise children."[3]

In my opinion, this court should not judicially extend through interpretation an all encompassing doctrine of almost total liability by requiring medical practitioners to have the duty to remove all foreign objects in their patients' bodies, even if they or the patients are unaware of its existence, or did not themselves leave them or place them therein. The doctor may have been negligent for not taking X-rays, as a lawyer may be negligent for failure to perform — but the statute should run on both, equally, except for the one limitation as previously discussed. The trial judge properly granted summary judgment to the defendant predicated on the statute of limitations.

I am authorized to state that Judge Birdsong and Judge Underwood join in this dissent.

BIRDSONG, Judge, dissenting.

We deal here with the applicability of either a one-year or a two-year statute of limitations. The one-year statute, as observed in the dissent by Chief Judge Deen, applies where a foreign object (i.e., a sponge, a towel, etc.) is placed in the body of a patient and is left therein by the treating physician. To protect the public against such torts and resulting injuries, which ordinarily do not manifest themselves at the time of the treatment, but arise as a delayed bodily reaction to an object or substance negligently left in the body (and thus remain hidden from the patient), it was logical and proper for the legislature to carve out and create a specific period of limitation geared to the time that the patient discovered the presence of the substance or object rather than the time that the surgical treatment occurred. However, because it is an accepted medical procedure for

[2]B. F. Skinner, About Behaviorism (New York: Alfred A. Knopf, 1974).
[3]B. F. Skinner, Walden Two.

some foreign objects or substances to be placed and left in the body by the treating physician as a part of specific treatment procedures, such as chemical compounds (i.e., used in radiation or X-ray treatment), fixation devices (i.e., pins in broken bones), or prosthetic aids or devices (i.e., pacemakers, heart valves, etc.), it was equally proper and logical for the legislature to exclude as negligent acts covered by the one-year period of limitations, those designated foreign objects or substances when used in a legitimate treatment procedure. Code Ann. § 3-1103. Nevertheless, should a surgeon be negligent in the use or insertion of a chemical compound, a fixation device, or prosthetic aid or device *as a part of a treatment procedure,* the two-year statute of limitation remains applicable, for it is the treatment itself that gives rise to the injury, even though this includes the insertion of chemical compounds, fixation devices, or prosthetic aids or devices.

I am also in agreement with Chief Judge Deen's observation that we are bound by the case of *Parker v. Vaughan,* 124 Ga. App. 300, 303 (183 SE2d 605) which expressly limited the doctrine of continuing medical torts to those cases wherein the surgeon inserts a foreign substance or object other than those excepted in the statute and negligently closes the substance or the object in the patient's body. See *Clark v. Memorial Hospital of Bainbridge,* 145 Ga. App. 305 (243 SE2d 695). The doctrine of inclusio unius est exclusio alterius further reinforces the conclusion that the legislature intended to limit the doctrine of continuing medical tort liability only to those substances or objects placed into and negligently left in the patient's body during surgical procedures. If the mere treatment of an injury which includes a hidden object in the body unknown to the doctor or patient and not placed in the body by the doctor, can give rise to the limited continuing medical tort liability defined by the legislatively and narrowly defined exception relating to substances or objects *used* in surgical procedures and negligently left in the body, then the distinction between the one-year and two-year period of limitations becomes blurred, even indistinguishable, and renders the exception carved by the legislature meaningless. I therefore respectfully dissent from the unrestricted view

of the majority and would affirm the grant of summary judgment.

I am authorized to state that Chief Judge Deen, and Judge Underwood join in this dissent.