## 65145. ALLRID v. EMORY UNIVERSITY et al.

POPE, Judge.

This suit was initially brought by James Allrid and Julie Allrid, individually and as husband and wife, against Emory University and others for injuries allegedly sustained by Mr. Allrid as the result of a diagnostic procedure in which a radioactive substance called Thorotrast was used. Mr. Allrid died during the course of this litigation and his wife, as executrix of his estate, was substituted for him as a party plaintiff. The diagnostic procedure took place in February 1956; in March 1979 the Thorotrast was discovered to be still present in Mr. Allrid's body and was alleged to be the cause of Mr. Allrid's chronic sore throats, debilitated physical condition and, by amended complaint, his subsequent death. The trial court granted Emory's motion for summary judgment on the ground that the statute of limitation barred the medical malpractice action against it. Code Ann. § 3-1102 (now OCGA § 9-3-71). The Georgia Supreme Court affirmed the trial court on this ground. *Allrid v. Emory Univ.*, 249 Ga. 35 (285 SE2d 521) (1982). However, the Supreme Court found that the trial court had failed to resolve the issue of Emory's liability as a "supplier of dangerous chattel." Thus, the case went back to the trial court for determination of this issue. Emory again moved for summary judgment. The trial court found that "plaintiff's final claim against Emory University as the supplier of a dangerous chattel is encompassed by the definition of an 'action for medical malpractice' contained in Ga. Code Ann. § 3-1101, and is therefore barred by the statute of limitations contained in Ga. Code Ann. § 3-1102. . . ." Summary judgment was granted in favor of Emory and Mrs. Allrid appeals.

1. Appellant contends that the trial court erred in granting summary judgment in favor of Emory because her claim against it is a cause of action based on a theory of products liability (Emory as the supplier of dangerous chattel) which accrued in March 1979 (see *King v. Seitzingers, Inc.*, 160 Ga. App. 318 (287 SE2d 252) (1981)) and is therefore not barred by the statute of limitation for medical malpractice. *Allrid v. Emory Univ.*, supra. We do not agree.

Code Ann. § 3-1101 (now OCGA § 9-3-70) provides: "As used in this section, the term 'action for medical malpractice' means any claim for damages resulting from the death of or injury to any person arising out of (a) health, medical, dental, or surgical: (1) service, (2) diagnosis, (3) prescription, (4) treatment, or (5) care, rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of such lawfully authorized person, or (b) care or service rendered by any public or private

hospital, nursing home, clinic, hospital authority, facility or institution, or by any officer, agent or employee thereof acting within the scope of his or her employment." Appellant argues strenuously that because Emory allegedly supplied the Thorotrast for purposes of the diagnostic procedure used on Mr. Allrid, providing the substance should be considered a "sale" rather than a "service" for purposes of defining her cause of action.

It is not necessary for us to distinguish between a "sale" and a "service" here. We hold that in either case appellant's claim fits within the definition of an "action for medical malpractice" under Code Ann. § 3-1101.

While we find no Georgia case directly on point, in Faser v. Sears, Roebuck & Co., 674 F2d 856 (11th Cir. 1982), the United States Court of Appeals, Eleventh Circuit, ruled on a case arising under the Georgia medical malpractice statute. In Faser, the plaintiff sued a pharmacy operated by Sears, Roebuck & Co. for injuries caused by a prescription drug purchased at the pharmacy. In holding that plaintiff's cause of action against the pharmacy fell within the definition of medical malpractice, the Faser court said: "[T]he Georgia definition of 'medical malpractice' specifically includes a 'medical . . . prescription . . . rendered by a person authorized by law to perform such (a) service.' Ga. Code Ann. § 3-1101 (a) (3). Moreover, Georgia law historically has allowed medical malpractice suits against parties other than physicians. *See, e.g., Shannon v. Thornton,* 155 Ga. App. 670, 272 S. E. 2d 535 (1980) (dentists); *St. Joseph's Hospital, Inc. v. Mattair,* 239 Ga. 674, 238 S. E. 2d 366 (1977) (hospitals)." Faser, supra, at 859.

We find the federal court's reasoning persuasive. A hospital supplying a drug or substance to a doctor for medical treatment of a patient is a person authorized by law to perform such a *service* (Code Ann. § 3-1101 (a)) and provision of the drug or substance falls within the ambit of care or service rendered by any public or private hospital (Code Ann. § 3-1101 (b)).

2. Mrs. Allrid contends (by supplemental brief) that summary judgment in favor of Emory should be reversed because she has a viable wrongful death claim which is not barred by the statute of limitation. The amended complaint included a count which set forth several allegations of negligence relating to the injection of the drug Thorotrast into Mr. Allrid. This negligence was asserted as the proximate cause of his death.

The Supreme Court has recently held that the statute of limitation for medical malpractice claims cannot constitutionally be applied to wrongful death claims asserting medical malpractice as the cause of death. See *Clark v. Singer,* 250 Ga. 470 (298 SE2d 484)

(1983). Under the Civil Practice Act "a complaint is not required to set forth a cause of action, but need only set forth a claim for relief...." *Mitchell v. Dickey,* 226 Ga. 218, 220 (173 SE2d 695) (1970). "[T]here is no magic in nomenclature, and in classifying pleadings we will construe them to serve the best interests of the pleader...." *Holloway v. Frey,* 130 Ga. App. 224, 227 (202 SE2d 845) (1973). An action for wrongful death may be premised upon "any negligence which was actionable at common law." *Caskey v. Underwood,* 89 Ga. App. 418, 420 (79 SE2d 558) (1953); see Code Ann. § 105-1301 (now OCGA § 51-4-1 (2)). Thus, such an action can be premised upon an allegation of medical malpractice. See *Clark v. Singer,* supra; *Andrews v. Lofton,* 80 Ga. App. 723 (57 SE2d 338) (1950). Applying these precepts to appellant's amended complaint, there is clearly a cause of action set forth for wrongful death.

In the first appearance of this case on appeal, the Supreme Court determined that appellant's medical malpractice personal injury claim was barred by the statute of limitation and, therefore, that summary judgment was properly entered as to that issue. *Allrid v. Emory Univ.,* supra at (1). The Supreme Court went on to note, however, that an issue raised by appellant's amendment to the complaint — the issue of Emory's liability under the "supplier of dangerous chattel" theory — had not been determined on the summary judgment motion and that this issue remained to be resolved by the trial court. As noted in Division 1 of this opinion, this formerly unaddressed issue has now been resolved adversely to appellant. No mention of the issue of Emory's liability under the wrongful death theory was made in the Supreme Court's decision. Emory had the burden on its motion for summary judgment to affirmatively negative all the appellant's claims and show that she was not entitled to recover *under any theory of the case.* See *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14 (3a) (198 SE2d 381) (1973). Therefore, since this issue also was raised by the amended complaint, and was not then, nor has it yet been, addressed by the trial court, resolution of this issue is still pending before the trial court.

This brings us to the observation made by the Supreme Court in *Clark v. Singer* — that this case "was a personal injury and loss of consortium suit" instituted by the Allrids. This observation was not essential to the determination of the *Clark* case but, rather, was offered merely by way of illustration. Thus, the issue of Emory's liability under a wrongful death theory was not addressed by the Supreme Court in its *Allrid* decision. The observation is obiter dictum and is not binding on this court. See *Wright v. MARTA,* 248 Ga. 372 (283 SE2d 466) (1981); *Browning v. Europa Hair, Inc.,* 145 Ga. App. 361 (243 SE2d 742) (1978); Black's Law Dictionary 541 (4th ed.

1968). Surely the Supreme Court did not intend sub silentio to preclude appellant from a full and fair hearing on an issue clearly raised by her complaint as amended. We find that the effect of the trial court's order in the case at bar was to grant partial summary judgment to Emory but to reserve for future determination the wrongful death issue.

We offer as obiter dicta our opinion that the Supreme Court's decisions in *Allrid v. Emory Univ.,* supra, and *Clark v. Singer,* supra, appear to be inconsistent. While conceding that there are technical differences between a common law action for personal injury based on medical malpractice and a statutory action for wrongful death based upon the same set of facts (e.g., when the cause of action accrues, who may bring the action, the measure of damages), it seems to us illogical to hold that the statute of limitation for medical malpractice claims is constitutional when applied to a personal injury claim and yet unconstitutional when applied to a wrongful death claim based upon the same set of facts.

In *Clark,* the Supreme Court noted that application of Code Ann. § 3-1102 could bar a claim for wrongful death before the cause of action accrued. The Court found no rational basis for distinguishing between a wrongful death claim based on medical malpractice and any other wrongful death claim. Thus, Code Ann. § 3-1102 was held unconstitutional as applied to actions for wrongful death. Yet, in *Allrid,* the Court found a rational basis for distinguishing between a personal injury claim based on medical malpractice and all other personal injury claims, even though the application of Code Ann. § 3-1102 would have the effect, in many cases, "of cutting off rights before there is any knowledge of injury." *Allrid,* supra at 37. A cause of action for personal injury accrues when exposure to the hazard first produces ascertainable injury. Id. at 36. The avowed purpose of a statute of limitation such as Code Ann. § 3-1102 is to " '[prevent surprise] through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " Id. at 39. How is this purpose served when the same set of facts will bar one claim and yet allow another?

In our view, there is simply no logical distinction, no rational basis if you will, between a plaintiff who has suffered personal injuries as the result of medical malpractice and a plaintiff who has been injured by some other form of negligence. The result of the decisions in *Allrid* and *Clark* is to bar suit for medical malpractice after a two-year period during which the injury may not even have been discoverable by the patient, yet allow suit based on the same tortious act after the patient has died. After the two-year period, the dichotomy created by these two recent decisions places a paradoxical

pre-condition to suit for an act of medical malpractice: the patient's death.

If Code Ann. § 3-1102 is unconstitutional because it might cut off a wrongful death action before it accrues, then surely it is also unconstitutional because it might cut off a personal injury claim before it accrues the same as any other such claim. A citizen's right to litigate with another citizen should not be decided on technicalities. See *City of Atlanta v. Intl. Society &c., Inc.,* 240 Ga. 96 (239 SE2d 515) (1977). As noted by Cicero in his commentaries: "There cannot be one law for Rome and another law for Athens." See also *Parker v. Vaughan,* 124 Ga. App. 300, 304 (183 SE2d 605) (1971) (Eberhardt, J., dissenting). The Supreme Court's decision in *Allrid* should be reconsidered and overruled.

*Judgment affirmed in part; reversed in part. Shulman, C.J., and Banke, J., concur. Deen, P. J., concurs and concurs specially. McMurray, P. J., concurs in the judgment only. Quillian, P. J., Birdsong, Carley and Sognier, JJ., dissent.*

DECIDED MARCH 17, 1983 —
REHEARINGS DENIED MARCH 31, 1983 — ▇▇▇▇▇▇▇

*Philip C. Henry, George W. Hart, W. Edward Andrews,* for appellant.

*J. Bruce Welch, Daryll Love, John A. Gilliland, Robert G. Pennington, Kirk M. McAlpin, Jr.,* for appellees.

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, it is appropriate to make a few observations.

The status of the law in the areas outlined in the majority as related to professional malpractice and the statute of limitations points up a three-pronged most difficult, discriminatory dilemma of differing dimensions of disparity.

*First.* As pointed out in the majority opinion, if the patient does not immediately die the statute runs two years from the time of the non-ascertained wrongful act in a malpractice case, while on the other hand, if the patient becomes a vegetable after the wrongful non-ascertainable act and lives another fifty years, suit may then be brought for wrongful death, if related to the original wrongful act, at this late date.

*Second.* As Judge Eberhardt pointed out in *Parker v. Vaughan,* 124 Ga. App. 300, 304 (183 SE2d 605) (1971), "I am unable to justify the establishment of one standard as to the commencement of the

running of the statute of limitation in a malpractice action against an attorney and another standard to be applied to a malpractice against a doctor." See also my dissent in *Banks v. Dalbey,* 150 Ga. App. 779, 781 (258 SE2d 701) (1979). The majority opinion was overruled in this case by the Supreme Court in *Dalbey v. Banks,* 245 Ga. 162 (264 SE2d 4) (1980). My dissent in *Banks,* supra at 783, discusses the possible applicability of the res ipsa loquitur doctrine in common knowledge rare situations accounting and explaining the reasons for this separate treatment.

The General Assembly may have provided this exception in this rare medical malpractice area, such as a doctor leaving a sponge in a patient's body after an operation, because of the "common knowledge doctrine" which is intertwined with and includes a type of res ipsa loquitur rule in these unusual situations. See generally "Res Ipsa Loquitur and Medical Malpractice in Georgia: A Reassessment," 17 Ga. Law Rev. 33, 76 (1982). "To put it more bluntly, medical defendants, as a class, are not deserving of any special dispensation from inferences of negligence that may be logically drawn from the circumstances. One suspects, but cannot prove, that underlying the judicial condemnation of res ipsa loquitur in malpractice cases is the instinct to provide just such protection."

*Third.* There appears to be generally a less harsh rule applicable to professional malpractice (medical and/or legal) where the statute of limitations immediately runs from the date of the unascertained wrongful act, except in the former where the patient dies, and further except for the rare sponge-type case, on the one hand, and, a more harsh rule on the other hand for wrongful acts committed by non-professional lay persons where the statute does not run against them until the wrongful act is ascertained . . . "accrues when exposure to the hazard first produces *ascertainable* injury." *Everhart v. Rich's, Inc.,* 229 Ga. 798, 802 (194 SE2d 425) (1972). (Emphasis supplied.) Compare *Wellston Co. v. Sam N. Hodges, Jr. & Co.,* 114 Ga. App. 424 (151 SE2d 481) (1966). "Ascertainable" may be five, ten or twenty-five years later in non-professional wrongful acts whereas as to professional malpractice the statute would already have run from the date of the non-ascertainable wrongful act.

The majority opinion further cites as authority for equal justice one of the two or three greatest lawyers of the ancient world, Marcus Tullius Cicero.[1] The latter denounced the "double standard" rule that some were to be above the law, fed out of one spoon, and others

---

[1] Indeed, Cicero's succinct definition of true law in his *De Republica* as right reason in agreement with nature should not go ignored in our modern world.

below the law, fed out of a different spoon.

The case under review must be reversed because of the reasons set forth in the well reasoned majority opinion pertaining to most complex areas of the law.

CARLEY, Judge, dissenting.

I concur fully in Division 1 of the majority opinion. However, it is with the greatest reluctance that I join the dissent of Judge Sognier with regard to Division 2 of the majority opinion. I certainly understand the motivation of the majority because of the recent Supreme Court decisions of *Clark v. Singer,* 250 Ga. 470 (298 SE2d 484) (1983) and *Hart v. Eldridge,* 250 Ga. 526 (299 SE2d 560) (1983). If the rationale of *Clark* had been applied at the time of the rendition of the decision in *Allrid v. Emory Univ.,* 249 Ga. 35 (285 SE2d 521) (1982), appellant's cause of action for wrongful death would not have been held to be barred by the statute of limitation. Thus, clearly, fairness and justice would be served by the result approved by the majority. Unfortunately, however, we cannot ignore the procedural imperfections in a case at our bar in order to improperly achieve in that case, a result which would — under other circumstances — be just and proper. Accordingly, I agree with Judge Sognier that we are bound by the law of the case and that we have no alternative but to affirm the judgment of the trial court. Therefore, I must dissent.

SOGNIER, Judge, dissenting.

I respectfully dissent to Division 2 of the majority opinion. I do not agree that summary judgment in favor of Emory should be reversed because Mrs. Allrid has a viable wrongful death claim which is not barred by the statute of limitations.

In *Clark v. Singer,* 250 Ga. 470 (298 SE2d 484) (1983) our Supreme Court held that the two-year statute of limitation for medical malpractice actions, OCGA § 9-3-71 (Code Ann. § 3-1102), is unconstitutional as applied to actions for wrongful death. The complaint in the instant case was amended to include a wrongful death action, and the majority holds that that cause of action has been revived by the Supreme Court's decision in *Clark v. Singer.* I disagree.

After Mr. Allrid's death, appellant was substituted as the party plaintiff. She filed an amendment to the complaint "individually and as Executrix of the Estate of James Barber Allrid, deceased . . .," and she alleged in the amendment that the actions of appellee resulted in Allrid's death. The Supreme Court in *Allrid v. Emory Univ.,* supra, had before it *all* the issues raised in the trial court on summary judgment (including the products liability claim) and chose to send

the case back to the trial court *only* on the issue of products liability. That issue has been decided in Division 1 of the majority. We must assume, however, that the wrongful death issue was decided adversely to appellant by the Supreme Court.

Summary judgment is a decision on the merits of the case, and once a final ruling is made on a motion for summary judgment all issues respecting the motion have been adjudicated. The plaintiff here was obligated to assert in resisting defendant's motion for summary judgment, every theory of recovery available in the case before the Supreme Court determined that summary judgment was correctly granted. The ruling by the Supreme Court was binding in all subsequent proceedings in this case in the trial court. *Ansley v. Atlanta Suburbia Estates,* 231 Ga. 640, 641 (203 SE2d 861) (1974). See also *Southern R. Co. v. Overnite &c. Co.,* 225 Ga. 291 (168 SE2d 166) (1969). The duty of each party at the hearing on the motion for summary judgment is to present his case in full; and a party against whom summary judgment has been granted is in the same position as if he suffered a verdict against him. *Summer-Minter v. Giordano,* 231 Ga. 601, 604 (203 SE2d 173) (1974). *Hart v. Eldridge,* 250 Ga. 526 (299 SE2d 560) (1983) does not require a different result because the issue regarding the wrongful death claim was on certiorari to the Supreme Court and still a viable claim.

I recognize that my position regarding Mrs. Allrid's wrongful death claim appears harsh in view of the decision in *Clark v. Singer.* However, the Court of Appeals is not a court to correct the errors of the Supreme Court of Georgia. Only that court can correct its own errors, and that opportunity is still available. We cannot correct inequities at the cost of violating what I view as the law of the case. I respectfully dissent.

I am authorized to state that Presiding Judge Quillian, Judge Birdsong and Judge Carley join in this dissent.