**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**December 4, 2023**

# In the Court of Appeals of Georgia

A23A1225. FULLER LIFE CHIROPRACTIC CENTER, P.C. et al.
v. THREADGILL et al.

BARNES, Presiding Judge.

Following the grant of their application for interlocutory appeal, Fuller Life Chiropractic Center, P. C., Ronald Dean Fuller, II, D. C., and Christopher W. Odom, D. C., appeal from the trial court's order denying their motion for judgment on the pleadings or, alternatively, motion to dismiss the chiropractic malpractice action brought against them by Jodi Marie Threadgill and Charles A. Threadgill. The central question in this appeal is whether a professional negligence action alleging breach of the standard of care by a chiropractor is subject to the five-year statute of repose applicable to actions for medical malpractice. For the reasons discussed below, we

answer that question in the affirmative. Because the trial court concluded otherwise, we reverse.

When, as in this case, the defendants file a motion for judgment on the pleadings and do not introduce affidavits, depositions or interrogatories in support of the motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Such a motion should not be granted unless the averments in the complaint disclose with certainty that the plaintiff[s] would not be entitled to relief under any state of facts which could be proved in support of [their] claim. (Citation and punctuation omitted.) *Montgomery v. Bank of America*, 321 Ga. App. 343, 343 (740 SE2d 434) (2013). We review de novo a trial court's ruling on a motion for judgment on the pleadings or motion to dismiss, and we construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. Id. See *Campbell v. Cirrus Ed.*, 355 Ga. App. 637, 638 (845 SE2d 384) (2020). "In our de novo review, we may consider exhibits attached to and incorporated into the complaint and answer." (Citation and punctuation omitted.) *110 Hampton Point, LLC v. Ross*, 368 Ga. App. 630, 630 (890 SE2d 33) (2023). See OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

So viewed, the plaintiffs' complaint and expert affidavit attached thereto show the following. At all times relevant to this lawsuit, Drs. Fuller and Odom were chiropractors licensed to practice in Georgia. Dr. Fuller was the principal owner of

the Fuller Life Chiropractic Center ("Fuller Life"), and Drs. Fuller and Odom provided chiropractic treatment to Fuller Life patients. Jodie Threadgill sought chiropractic treatment at Fuller Life on August 7 and 8, 2012. On August 7, 2012, Dr. Fuller performed a chiropractic adjustment or manipulation of Mrs. Threadgill's spine, and Dr. Odom performed a chiropractic adjustment or manipulation of her spine the following day. As a result of these spinal adjustments or manipulations, Mrs. Threadgill allegedly suffered severe, permanent injuries to her spinal cord and discs.

On August 6, 2014, Mrs. Threadgill and her husband, Charles Threadgill, sued Drs. Fuller and Odom and Fuller Life, alleging that the defendant chiropractors provided negligent chiropractic care and treatment to Mrs. Threadgill on August 7 and 8, 2012, and that their negligence caused her spinal cord and disc injuries. The complaint further alleged that the Center was liable based on the doctrine of respondeat superior. The Threadgills attached to their complaint an expert affidavit in which a chiropractor opined that Drs. Fuller and Odom breached the applicable standard of care for chiropractic doctors in their treatment of Mrs. Threadgill and that their deviations from that standard were the proximate cause of her injuries.

3

The Threadgills voluntarily dismissed their action without prejudice on August 15, 2017. On February 14, 2018, the Threadgills filed a renewal action against the defendants pursuant to OCGA § 9-2-61.[1] The allegations in the renewal complaint and attached expert affidavit were the same as those contained in the original complaint and affidavit.

The defendants answered, denying liability. Subsequently, on February 7, 2022, the defendants filed a motion for judgment on the pleadings or, alternatively, to dismiss the renewal action for failure to state a claim upon which relief could be granted ("dismissal motion"). The defendants argued that the Threadgills' chiropractic malpractice claims were barred by OCGA § 9-3-71 (b),[2] the five-year

[1] OCGA § 9-2-61 (a) provides in relevant part:
When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action[.]

[2] OCGA § 9-3-71 provides in part:
(a) Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.
(b) Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.

4

statute of repose applicable to actions for medical malpractice. The Threadgills opposed the dismissal motion, contending that OCGA § 9-3-71 (b) did not apply to claims alleging professional negligence by a chiropractor; that the defendants were barred from raising a statute-of-repose defense because they raised it in an untimely manner and were equitably estopped from asserting such a defense based on fraud; and that the renewal complaint included claims for ordinary negligence that were not covered by the statute of repose.

In addressing the defendants' dismissal motion, the trial court framed the controlling question as whether "for the purposes of OCGA § 9-3-71 (b), treatment by a chiropractor is medical treatment such that an action against a chiropractor would be considered a medical malpractice action." The trial court answered its question in the negative, concluding that the statute of repose does not apply to "non-medical acts, errors, or omissions" and that treatment by a chiropractor does not constitute the "practice of medicine." In support of its conclusion, the trial court relied on an unofficial opinion of the Attorney General of Georgia issued in 1972,

(c) Subsection (a) of this Code section is intended to create a two-year statute of limitations. Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation.

5

which concluded that chiropractors were "not considered physicians for insurance purposes" and reasoned that

> the definition of "chiropractic," as set forth in Ga. Laws 1921, p. 166 (Ga. Code Ann. 84-501), is not broad enough to bring chiropractic within the definition of "practice of medicine" contained in Ga. Code. Ann. § 84-901, as amended by Ga. Laws 1970, p. 301.

1972 Op. Atty. Gen. No. U72-17 ("AG Opinion").[3] Because the trial court determined that chiropractic treatment was not the practice of medicine, the court ruled that OCGA § 9-3-71 (b) did not bar the Threadgills' renewal action even though it "was refiled more than five years after the subject event." Consequently, the trial court denied the defendants' dismissal motion.

The trial court granted the defendants a certificate of immediate review, and the defendants filed an application for interlocutory appeal, which this Court granted. This appeal followed.

At the outset, we note that

> [a] properly filed renewal action stands on the same footing as the original action with respect to statutes of limitation. Accordingly, if a

---

[3] The current definition of "chiropractic" is found at OCGA § 43-9-1 (2), and the current definition of "practice of medicine" is found at OCGA § 43-34-21 (3).

6

renewal action is properly filed within six months after dismissal of the original action, it remains viable even though the statute of limitation may have expired. However, the Supreme Court [of Georgia] has held that the legislature never intended for the dismissal and renewal statutes to overcome the five-year statute of repose for medical malpractice actions set forth in OCGA § 9-3-71(b). [See] *Wright v. Robinson*, 262 Ga. 844, 846 (1) (426 SE2d 870) (1993).

(Citations and punctuation omitted.) *Blackwell v. Goodwin*, 236 Ga. App. 861, 863 (2) (513 SE2d 542) (1999). The five-year statute of repose "stands as an unyielding barrier to a plaintiff's right of action," is "absolute," and "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists." *Wright*, 262 Ga. at 845 (1). Thus, if a plaintiff refiles her action for medical malpractice more than five years after the date upon which the alleged negligent act or omission occurred, the action is subject to dismissal pursuant to OCGA § 9-3-71(b). See id. at 846 (1)*; Carr v. Kindred Healthcare Operating*, 293 Ga. App. 80, 82 (2) (666 SE2d 401) (2008); *Blackwell*, 236 Ga. App. at 863-865 (2).

It is undisputed that the Threadgills' renewal action was filed more than five years after the alleged negligent acts and omissions of Drs. Fuller and Odom. Accordingly, if OCGA § 9-3-71 (b) applies to the Threadgills' claims, their renewal action was time-barred and should have been dismissed by the trial court. See *Wright*,

262 Ga. at 846 (1)*; Carr*, 293 Ga. App. at 82 (2); *Blackwell*, 236 Ga. App. at 863-865 (2).

1. The defendants argue that the trial court erred in concluding that professional negligence claims asserted against chiropractors are not subject to OCGA § 9-3-71 (b). According to the defendants, a professional negligence action against a chiropractor is an "action for medical malpractice" as that phrase is used in the statute of repose.

In addressing whether OCGA § 9-3-71(b) applies to professional negligence claims against chiropractors, we are mindful that

> [i]n considering a statute's meaning, courts must afford the words of the statute their ordinary meaning, and we must presume that the General Assembly meant what it said and said what it meant. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.

(Citations and punctuation omitted.) *Southern States Chemical v. Tampa Tank & Welding*, 316 Ga. 701, 713 (2) (888 SE2d 553) (2023).

Guided by these statutory construction principles, we turn to the language of OCGA § 9-3-71 (b), which provides that an "action for medical malpractice" cannot

8

"be brought more than five years after the date on which the negligent or wrongful act or omission occurred." The phrase "action for medical malpractice" as used in the statute of repose is defined in OCGA § 9-3-70:

> As used in this article, the term "action for medical malpractice" means any claim for damages resulting from the death of or injury to any person arising out of:
>
> (1) *Health*, medical, dental, or surgical service, diagnosis, prescription, *treatment, or care rendered by a person authorized by law to perform such service* or by any person acting under the supervision and control of the lawfully authorized person; or
>
> (2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment.

(Emphasis supplied.) By the plain language of these statutes, the five-year statute of repose encompasses claims for damages resulting from injury to a plaintiff arising out of "[h]ealth . . . treatment[ ] or care" provided by a person authorized by law to perform such service. And we conclude that professional negligence claims against chiropractors for injuries arising from their treatment and care of their patients fit within that statutory definition.

9

Chapter 9 of Title 43 of the Official Code of Georgia Annotated addresses the licensing and regulation of chiropractors. Chiropractors who comply with the licensing requirements and other rules imposed by that chapter have the right to practice "chiropractic" as that term is defined in OCGA § 43-9-1 (2) and "to evaluate, diagnose, and adjust patients according to specific chiropractic methods in order to correct spinal subluxations or to adjust the articulations of the human body." OCGA § 43-9-16 (a). "Chiropractic" is defined in OCGA § 43-9-1 (2):

> "Chiropractic" means the adjustment of the articulations of the human body, including ilium, sacrum, and coccyx, and the use of X-ray, provided that the X-ray shall not be used for therapeutical purposes. The term shall also mean that separate and distinct branch of the healing arts whose science and art utilize the inherent recuperative powers of the body and the relationship between the musculoskeletal structures and functions of the body, particularly of the spinal column and the nervous system, in the restoration and maintenance of health. Chiropractic is a learned profession which teaches that the relationship between structure and function in the human body is a significant health factor and that such relationships between the spinal column and the nervous system are most significant, since the normal transmission and expression of nerve energy are essential to the restoration and maintenance of health. However, the term shall not include the use of drugs or surgery. The adjustment referred to in this paragraph and subsection (b) of Code Section 43-9-16 may only be administered by a doctor of chiropractic

10

authorized to do so by the provisions of this chapter; provided, however, that the provisions of this Code section shall not prevent any other health care provider from administering techniques authorized within their scope of practice.

The "scope of practice of chiropractors" is set out in OCGA § 43-9-16. In performing the "chiropractic adjustment of the spine or articulations of the human body," chiropractors are authorized to perform "manual adjustments and adjustments by means of electrical and mechanical devices which produce traction or vibration." OCGA § 43-9-16 (b). Additionally, chiropractors who comply with Chapter 9 may use certain treatment "modalities," which "include any physical agent applied to produce therapeutic change to biologic tissues including thermal, acoustic, noninvasive light, mechanical, or electric energy, hot or cold packs, ultrasound, galvanism, microwave, diathermy, and electrical stimulation." Id. Chiropractors in compliance with Chapter 9

> may utilize and recommend therapeutic procedures effecting change through the application of clinical skills and services that attempt to improve function, including therapeutic exercise, therapeutic activities, manual therapy techniques, massage, and structural supports as they relate to the articulations of the human body; provided, however, that the same shall not be construed to allow chiropractors to treat patients outside the scope of practice of chiropractic as set forth in this chapter.

11

OCGA § 43-9-16 (b). Such chiropractors also "may recommend the use of nutritional and dietary supplements," OCGA § 43-9-16 (i), and they "have the right to sign health certificates, reporting the same to the proper health officers the same as other practitioners." OCGA § 43-9-16 (d). Chiropractors, however, cannot "prescribe or administer medicine to patients, perform surgery, or practice obstetrics or osteopathy." OCGA § 43-9-16 (e).

In sum, Georgia law defines chiropractic as a "healing art[ ]" aimed at "the restoration and maintenance of health," OCGA § 43-9-1 (2); licensed chiropractors may "evaluate, diagnose, and adjust patients . . . to correct spinal subluxations or to adjust the articulations of the human body," OCGA § 43-9-16 (a); and licensed chiropractors are entitled to use on their patients a wide range of therapeutic procedures and treatment modalities, including "any physical agent applied to produce therapeutic change to biologic tissues," OCGA § 43-9-16 (b). Given the statutory definition of "chiropractic" and the scope of practice afforded to chiropractors, we conclude that chiropractors are authorized under Georgia law to provide "[h]ealth . . . treatment[ ] [and] care" to their patients, such that an action alleging professional negligence against a chiropractor meets the definition of an "action for medical malpractice" set forth in OCGA § 9-3-70 (1). See generally Ga.

12

Comp. R. & Regs., r. 100-10-.01 (b) (Georgia Board of Chiropractic Examiners regulation providing that "[t]he doctor of chiropractic has the responsibility *as a primary healthcare provider* to examine, establish a diagnosis/clinical impression, render treatment and/or referral, commensurate with his/her findings") (emphasis supplied); *Foster v. Ga. Bd. of Chiropractic Examiners*, 257 Ga. 409, 419 (14) (359 SE2d 877) (1987) (treating chiropractic medicine as among the "health professions" in applying rational-basis standard to constitutional challenge to a regulation proscribing certain conduct by chiropractors). Accordingly, professional negligence actions against chiropractors are subject to the statute of repose imposed by OCGA § 9-3-71 (b).

In concluding that chiropractors were not subject to the statute of repose, the trial court reasoned that chiropractic is not the "practice of medicine," a phrase which is defined in the Medical Practice Act of Georgia, OCGA § 43-34-20 et seq. See OCGA § 43-34-21 (3).[4] But the "'the practice of medicine' in OCGA § [43-34-21 (3)]

---

[4] OCGA § 43-34-21 (3) provides:
"To practice medicine," "the practice of medicine," or "practicing medicine" means to hold oneself out to the public as being engaged in the diagnosis or treatment of disease, defects, or injuries of human beings; or the suggestion, recommendation, or prescribing of any form of treatment for the intended palliation, relief, or cure of any physical, mental, or functional ailment or defect of any person with the intention of receiving therefor, either

13

for purposes of licensing and registration [of physicians] is narrow whereas the meaning of 'medical malpractice' in OCGA § 9-3-70 for purposes of limitation of actions is broad," and the phrase "action for medical malpractice" contained in OCGA § 9-3-71 (b) "plainly encompasses more than the practice of medicine." (Citations and punctuation omitted.) *Zechmann v. Thigpen*, 210 Ga. App. 726, 727 (1) (437 SE2d 475) (1993).

> We have repeatedly noted that the broad scope of OCGA § 9-3-70 is not limited to licensed physicians. *Bradway v. American Nat. Red Cross*, 263 Ga. 19, 21 (426 SE2d 849) (1993) (blood bank); *Zechmann*, [210 Ga. App. at 727 (1)] (optometrist); *Allrid v. Emory Univ.*, 166 Ga. App. 130, 131(1) (303 SE2d 486) (1983), aff'd, 251 Ga. 367 (306 SE2d 905) (1983) (hospital dispensing drug).

---

directly or indirectly, any fee, gift, or compensation whatsoever; or the maintenance of an office for the reception, examination, and treatment of persons suffering from disease, defect, or injury of body or mind; or attaching the title "M.D.," "Oph.," "D.," "Dop.," "Surgeon," "Doctor," "D.O.," "Doctor of Osteopathy," "Allopathic Physician," "Osteopathic Physician," or "Physician," either alone or in connection with other words, or any other words or abbreviations to one's name, indicating that such person is engaged in the treatment or diagnosis of disease, defects, or injuries to human beings, provided that the terms "doctors of medicine," "doctors of osteopathic medicine," "doctors of medicine licensed to practice in the state," and similar terms wherever used or appearing in this article or elsewhere shall mean and include only those persons licensed under this article.

*Robinson v. Williamson*, 245 Ga. App. 17, 18-19 (1) (537 SE2d 159) (2000) (pharmacist). See *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 454 (a) (504 SE2d 514) (1998) (physical precedent only) (noting that "OCGA § 9-3-70 (1) and (2) defines an 'action for medical malpractice' so broadly . . . that the defendant medical doctors, psychologists, mental hospitals, and the dietician all come within the act"). The trial court's focus on whether chiropractic treatment constituted the "practice of medicine" therefore was misplaced.

Additionally, the trial court erroneously relied upon a 1972 unofficial AG Opinion to support its decision that professional negligence actions against chiropractors are not subject to the statute of repose. See 1972 Op. Atty. Gen. No. U72-17. As an initial matter, "opinions of the Attorney General are not binding upon this [C]ourt, even where applicable to the issues before us." (Citation and punctuation omitted.) *C. W. Matthews Contractor Co. v. Collins*, 214 Ga. App. 532, 533 (448 SE2d 234) (1994). In any event, the AG Opinion relied upon by the trial court is not applicable to the issues before us because it addressed whether chiropractors are physicians for insurance purposes, not whether actions alleging professional negligence against chiropractors are considered actions for medical malpractice under the statute of repose; the AG Opinion relied upon the definition of the "practice of

15

medicine," which is narrower than the definition of "action for medical malpractice," as discussed supra; and the AG Opinion was issued before OCGA §§ 9-3-70 and 9-3-71 (b) were enacted and thus cannot be construed as contemplating or addressing any of the matters raised in this case. See Ga. L. 1976, p. 1363, § 1; Ga. L. 1985, p. 556, § 1.

For all of the aforementioned reasons, we conclude that professional negligence claims against chiropractors are subject to the five-year statute of repose imposed by OCGA § 9-3-71 (b). Accordingly, the Threadgills' professional negligence claims against the defendants asserted in their renewal action were subject to the statute of repose, and the trial court erred in concluding otherwise.

2. "[T]his Court may affirm a trial court's ruling on a motion to dismiss if it is right for any reason, so long as the argument was fairly presented to the court below." (Citation and punctuation omitted.) *City of Alpharetta v. Francis*, 366 Ga. App. 454, 458 (2) (883 SE2d 400) (2023). We therefore consider the alternative arguments for denying the defendants' dismissal motion that were raised by the Threadgills in the trial court. However, we do not find the Threadgills' alternative arguments persuasive.

16

(a) In opposing the dismissal motion, the Threadgills argued that the defendants were barred from pursuing their statute-of-repose defense because they did not raise it in timely manner. The Threadgills emphasized that the defendants did not assert OCGA § 9-3-71 (b) as a defense in their answers and instead relied upon the statute of repose for the first time in their dismissal motion filed several years after the renewal action commenced. But "unlike a statute of limitation, a statute of repose generally cannot be waived, if not initially pled, or tolled." *Trax-Fax v. Hobba*, 277 Ga. App. 464, 469 (2) (a) (627 SE2d 90) (2006). See *Miller v. Vitner*, 249 Ga. App. 17, 17 (546 SE2d 917) (2001) ("The statute of ultimate repose does not bar a cause of action from being brought, which is a defense to the merits that can be waived, but abrogates any cause of action so that no cause of action continues to exist; thus, the cause of action ceases to exist in law after the five years have passed."). The defendants therefore did not waive their statute-of-repose defense by failing to assert it earlier in the litigation. See *Trax-Fax*, 277 Ga. App. at 466 (2), 469-470 (2) (a) (concluding that defense predicated on OCGA § 34-9-245 had not been waived as untimely, where the statute in question was determined to be a statute of repose).

17

(b) The Threadgills also argued that the defendants were equitably estopped from raising their statute-of-repose defense. As we have explained,

> In certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense. In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence. In other words, there must be a separate and independent act of fraud.

(Citation and punctuation omitted.) *Golden v. Floyd Healthcare Mgmt.*, 368 Ga. App. 409, 419 (3) (a), n. 12 (890 SE2d 288) (2023).

The Threadgills argued in the court below that the defendants were equitably estopped from raising a statute-of-repose defense because they performed manipulations of Mrs. Threadgill's spine without first obtaining her informed consent. The Threadgills also asserted that the defendants were equitably estopped because they produced a document during discovery in which Dr. Odom denied performing a spinal manipulation on Mrs. Threadgill on August 8, 2012, and because they claimed in the litigation that Mrs. Threadgill had not been treated at Fuller Life on that date.

The conduct of the defendants alleged by the Threadgills does not support a claim of equitable estoppel. The defendants' alleged failure to obtain Mrs.

18

Threadgill's informed consent before performing the spinal manipulations on her that allegedly led to her injuries was not a "fraud separate from the underlying [alleged] negligence" that would support the application of equitable estoppel. *Smith v. Kayfan*, 364 Ga. App. 651, 655 (874 SE2d 465) (2022) (noting that equitable estoppel requires "a separate and independent act of fraud" occurring after the alleged medical malpractice). See *Wilhelm v. Houston County*, 310 Ga. App. 506, 509 (1) (c) (713 SE2d 660) (2011) (noting that equitable estoppel can be applied where the defendant's fraud "occurred *after* the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired") (emphasis in original). Furthermore, documents produced by the defendants after the Threadgills filed their lawsuit, and assertions made by the defendants during the litigation, even if false, do not support an equitable estoppel claim, which arises only where, "as a result of [the] fraud, the plaintiff did not file suit until after the repose period expired." (Citation and punctuation omitted.) *PTI Royston v. Eubanks*, 360 Ga. App. 263, 272 (2) (861 SE2d 115) (2021). See *Osburn v. Goldman*, 269 Ga. App. 303, 304 (1) (a) (603 SE2d 695) (2004) (explaining that application of equitable estoppel requires evidence of fraud "on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit"). Accordingly, the Threadgills have failed to allege any

19

conduct by the defendants that would equitably estop them from raising a statute-of-repose defense.

(c) Lastly, in opposing the dismissal motion, the Threadgills argued that their renewal complaint included a claim that the defendants failed to obtain Mrs. Threadgill's informed consent before performing physical manipulations and adjustments on her spine, and that this claim sounded in ordinary negligence and thus did not fall within the purview of OCGA § 9-3-71 (b). See *Piedmont Hosp. v. D. M.*, 335 Ga. App. 442, 445 (2) (779 SE2d 36) (2015) ("[B]y its terms, OCGA § 9-3-71 applies only to claims for medical malpractice, not to claims for ordinary negligence[.]").

As an initial matter, as pointed out by the defendants in seeking dismissal of the Threadgills' renewal action, our Supreme Court has held that "Georgia does not recognize a common law doctrine of informed consent"; that "the doctrine of informed consent for health procedures and treatment is defined in Georgia exclusively by statutes and regulations"; and that "[t]here is no question that chiropractic treatments are not among the procedures designated in [Georgia's informed consent statute,] OCGA § 31-9-6.1[,] for which informed consent is required." *Blotner v. Doreika*, 285 Ga. 481, 484-485 (2) (678 SE2d 80) (2009). The

20

Threadgills thus failed to state an informed consent claim, irrespective of whether the statute of repose was applicable to such a claim.

Nevertheless, even if the Threadgills' informed consent claim came within the ambit of Georgia's informed consent statute, OCGA § 31-9-6.1 (which it does not), that statute provides that "[a] failure to comply with the requirements of this Code section shall not constitute a separate cause of action but may give rise to an action for medical malpractice as defined in Code Section 9-3-70 and as governed by other provisions of this Code relating to such actions[.]" OCGA § 31-9-6.1 (d). Hence, such a claim still would be subject to the five-year statute of repose for medical malpractice actions. See *Blackwell v. Goodwin*, 236 Ga. App. 861, 863 (2) (513 SE2d 542) (1999) (concluding that the plaintiffs' claim for the alleged failure to obtain consent for an injection was subject to the five-year statute of repose for medical malpractice actions based on OCGA § 31-9-6.1 (d)). The Threadgills therefore failed to state any claims that were not subject to and barred by the statute of repose.

For all of these reasons, the trial court erred in determining that the Threadgills' renewal action was not barred by the statute of repose for medical malpractice actions. Because the defendants' dismissal motion should have been granted, we reverse the judgment.

21

*Judgment reversed. Land and Watkins, JJ., concur.*