## 65677. TUMLIN v. DANIELS.

BANKE, Judge.

In this dental malpractice action, the appellant, Diane Tumlin, alleges that the appellee negligently damaged her teeth and gums by extracting two of her healthy bicuspids when she was 10 years of age for the purpose of preventing protrusion of her front teeth due to crowding. This appeal follows the entry of a directed verdict in favor of the appellee on the ground that the appellant failed to introduce expert testimony showing the "parameters of acceptable conduct generally under similar facts and circumstances, a significant deviation from which would constitute negligence."

The appellee testified that he was a "general dentist" with no special training in orthodontics, having studied the subject only as part of his general curriculum in dental school. An orthodontic specialist called as a witness for the appellant testified by deposition as follows:

"Q: On the basis of the hypothetical facts that I have asked you to assume, as well as the information you have obtained from your examination and treatment of Diane Tumlin, are you able to form an opinion as to whether the extraction of two of Diane's permanent teeth, that is, her upper right and upper left bicuspids on November

15, 1972, in the place of orthodontic treatment, was in keeping with the ordinary care, skill, and diligence of a general dentist . . .

"A: The general dentist would normally not extract teeth in such a situation under such circumstances without further consultation, probably with an orthodontic specialist.

"Q: For what reasons is this the case?

"A: The hypothetical situation given to me does not suggest adequate diagnostic material to make a correct diagnosis, certainly one that would lead to the extraction of permanent teeth.

"Q: What diagnostic materials would you expect in the exercise of ordinary care and diligence of the profession of general dentistry?

"A: Extraction of teeth leading to orthodontic correction?

"Q: Yes, sir.

"A: That would require the same diagnostic work-up that should be done by a person who limits his practice to orthodontics.

"Q: What, if you will, please, is that diagnostic work-up?

"A: It should certainly include a head film for evaluation of teeth, to jaws, to face, to skull. It should include model analysis to determine alignment of teeth, space present for teeth, function of teeth, perhaps complete mouth x-rays, either panoramic or full-mouth series, for more accurate diagnosis, preferably photographs of face, particularly profile . . .

"Q: Would you state whether or not a general dentist in the exercise of ordinary care, skill, and diligence, in his profession, would undertake extraction of permanent teeth in lieu of orthodontic treatment without the diagnostic information you have outlined?

"A: Normally, he would not . . .

"Q: In your opinion, would you state whether or not a general dentist, in the exercise of ordinary care, skill, and diligence in his profession, would extract permanent teeth in lieu of orthodontic treatment without consultation from a specialist?

"A: Normally, he would seek advice . . .

"Q: On the basis of the hypothetical facts I have given you, as well as your examination of Diane, do you have an opinion, based upon reasonable medical certainty, as to whether the extraction of two permanent teeth; that is her upper left and right bicuspids on November 15, 1972, can be said to be casually related to the orthodontic conditions you have observed in her as a patient?

"A: Yes.

"Q: What is that opinion?

"A: In my opinion, the bite has closed as a result of the extraction of teeth. The back teeth have drifted, causing the bite to be improper . . .

"Q: Are you familiar with the phrase 'interceptive orthodontics'?

"A: Yes, I am.

"Q: Would you please state whether or not you understand that phrase to include the extraction of permanent teeth other than wisdom teeth?

"A: Normal interceptive orthodontics would not include extraction of permanent teeth . . .

"Q: Mr. Hill asked you whether, in your opinion, Diane Tumlin would be a candidate for orthodontic treatment. In your opinion, would this treatment be of the same quantitative and qualitative nature as the treatment program you have outlined for her?

"A: The treatment would be different, obviously, since teeth were extracted in a situation where extraction of teeth was not indicated. Treatment is more difficult as a result of missing teeth."
*Held:*

A dentist, like a physician or surgeon, is under a legal duty to exercise that degree of skill and diligence in treating his patients as is ordinarily employed by members of his profession generally. See *Gunthorpe v. Daniels,* 150 Ga. App. 113 (1) (257 SE2d 199) (1979); *Wagner v. Timms,* 158 Ga. App. 538 (1) (281 SE2d 295) (1981). See generally OCGA § 51-1-27 (Code Ann. § 84-924). The law presumes that the defendant performed the services in question with the proper degree of skill and care; and, except in extreme circumstances, the plaintiff can overcome this presumption only through expert testimony. See *Wagner v. Timms,* supra; *Wilson v. Kornegay,* 108 Ga. App. 318 (1) (132 SE2d 791) (1963).

The testimony of the appellant's orthodontic expert in this case was amply sufficient to support an inference that the appellee did not exercise that degree of skill and care employed by the dental profession generally in making his decision to remove the appellant's upper bicuspids. This testimony would also support a conclusion that the extraction of the teeth gave rise to an orthodontic problem requiring correction. It follows that the trial court erred in granting the appellee's motion for directed verdict. Accord *Gragg v. Spenser,* 159 Ga. App. 525, 528-529 (284 SE2d 40) (1981); *Lawrence v. Gardner,* 154 Ga. App. 722, 724 (270 SE2d 9) (1980).

*Judgment reversed. Deen, P. J., and Carley, J., concur.*

DECIDED MAY 3, 1983 —
REHEARING DENIED MAY 16, 1983.

*James C. Carr, Jr., John C. Dabney, Jr.,* for appellant.

*Glenn Frick,* for appellee.