69679. MURPHY et al. v. CLAYTON COUNTY HOSPITAL et al.
(333 SE2d 15)

McMURRAY, Presiding Judge.

On August 20, 1981, Nellie Carr was admitted to Clayton General Hospital for surgery. Surgery was performed on August 21, 1981 (cholecystectomy — removal of the gall bladder). Subsequently, it was determined that further surgery was necessary. The additional surgery was delayed in order to raise the potassium level of Mrs. Carr's blood to a safer level. The second surgery was commenced at approximately 6:00 p.m. on August 24, 1981, and completed at approximately 8:30

p.m.

Following the second surgery Mrs. Carr developed respiratory difficulties, difficulty in maintaining blood pressure, and cardiac arrhythmia and died approximately one and a half hours after the surgery was completed.

Subsequently, this malpractice action was filed by the children of the deceased and the executrix of the estate of the deceased. The defendants are three physicians who attended Nellie Carr, the Clayton County Hospital Authority, d/b/a Clayton General Hospital and Dennis Scheidt, the hospital administrator. Following discovery the hospital and its administrator moved for summary judgment. Plaintiffs appeal from the grant of summary judgment in favor of the hospital which was expressly entered as a final judgment, the trial court having determined that there was no just reason for delay. *Held*:

1. The uncontroverted evidence shows that the defendant physicians were not subject to control by the defendant hospital with regard to the performance of their medical and surgical treatment of patients. The hospital did not control the time, method or manner of performing medical services by the physician defendants. Thus, the physicians were independent contractors and (as there is no issue of negligent selection) the defendant hospital is not liable for any negligent performance of professional services by the physician defendants. *Allrid v. Emory Univ.*, 249 Ga. 35, 39-40 (285 SE2d 521).

2. Plaintiffs contend that genuine issues of material fact remain in regard to whether there was an error by hospital personnel in connection with the testing of Mrs. Carr's potassium level. The evidence indicates that the desired minimum potassium level for Mrs. Carr was 3 milliequivalents per liter. Low potassium could cause an arrhythmia of the heart, which could possibly cause death.

On the morning of August 24, 1981, Mrs. Carr's potassium level was determined to be 2.4. She was given potassium intravenously during the day. A sample collected at 5:00 p.m. tested as 2.6. There is evidence that a subsequent sample showed a potassium level of 3.1.

Plaintiffs place great reliance on the fact that the laboratory report of the 3.1 potassium level is dated 8/20 rather than 8/24. However, the uncontroverted affidavit of the laboratory technician states that the date 8/20 was mistakenly entered, that the date should have been 8/24 and that the form correctly reported the results of the potassium level test he did on the evening of August 24, 1981, which showed a potassium level of 3.1.

Plaintiffs further argue that the defendants' evidence is contradicted by evidence that it would be medically impossible to raise the potassium level from 2.6 at 5:00 p.m. to 3.1 at 5:55 p.m. (the time at which the later sample was taken). In connection with this the plaintiffs point out that the level was raised only from 2.4 at 10:00 a.m. to

2.6 at 5:00 p.m. during which time Mrs. Carr was receiving the potassium solution. More importantly, one of the defendant physicians testified that it would take more than an hour to raise Nellie Carr's potassium level from 2.6 to 3.1. We agree that this evidence contradicts the hospital's evidence that the potassium level was raised from 2.6 to 3.1 in 55 minutes and presents an issue as to the actual potassium level at the time of surgery. Hospital employees conducted the testing and reporting of the potassium level. Another hospital employee was responsible for inquiring as to such matters as the potassium level prior to surgery and directing the attention of the physicians to any deviation from the desired parameters. Under these circumstances genuine issues of material fact remain in regard to whether a breach of duty by a hospital employee occurred, and if so, whether such breach resulted in Nellie Carr being committed to surgery with a low potassium level. *Gragg v. Spenser*, 159 Ga. App. 525 (284 SE2d 40); *Tumlin v. Daniels*, 166 Ga. App. 635 (305 SE2d 145).

*Judgment reversed. Banke, C. J., and Benham, J., concur.*

DECIDED JUNE 17, 1985.

*Paul S. Weiner, P. J. Weiner*, for appellants.
*William H. Duckworth, Jr., Robert G. Tanner*, for appellees.