A98A1503. CHARTER PEACHFORD BEHAVIORAL HEALTH
SYSTEM, INC. et al. v. KOHOUT.
A98A1504. VARGAS v. KOHOUT.
A98A1505. CPC PARKWOOD HOSPITAL v. KOHOUT.
A98A1506. COBIELLA v. KOHOUT.
(504 SE2d 514)

ELDRIDGE, Judge.

This malpractice case involves mental health issues and the statute of limitation as to such actions. All appeals raise such issues of the statute of limitation but state the issues, in a number of different ways. Case Nos. A98A1503, A98A1504, and A98A1505 raise exclusively such issues, while Case No. A98A1506 raises additional issues that will not be reached.

Ms. Kohout has a history of mental health illness dating to 1987, which history pre-dates treatment by the defendants, of an eating disorder, depression, suicidal ideation, auditory hallucination, and reported sexual abuse by her father. In June 1990, plaintiff was diagnosed by Dr. Ann Gustin, a psychologist, as having multiple personality disorder ("MPD"), and Dr. Gustin treated the plaintiff for MPD

in 1990. While in therapy with Dr. Gustin, plaintiff engaged in physical abuse of herself, including cutting her body.

In August 1990, plaintiff began therapy at the same time with defendant Dr. Donna Ulrici, a psychologist, who is not a defendant-appellant. Dr. Ulrici learned of Dr. Gustin's diagnosis of MPD and concurred in the diagnosis. Plaintiff terminated her treatment with Dr. Gustin.

In March 1991, Dr. Ulrici admitted plaintiff to the Eating Disorder Unit at Charter Peachford Hospital ("Charter") where she remained until August 1991. Plaintiff alleges that Charter, Christine Engstrom, Dr. Grace Cobiella, and Dr. Fiameta Vargas, defendants-appellants, forced her through therapy to believe that she had a MPD with dozens of "altered personalities"; that she had been sexually abused by family members; and that such abuse occurred during satanic cult ceremonies. Plaintiff contends this is a misdiagnosis. Plaintiff alleges that Dr. Ulrici, with the assistance of the other defendants, used improper therapy or used therapy in an improper way through "memory work," "guided imagery," "body memories," and hypnosis, as well as drug therapy, resulting in recovered memory and causing plaintiff to believe that she had been abused sexually by her family during satanic rituals and that she had a MPD as a result. Thus, using improper therapy, plaintiff recovered "repressed" memories of sexual and satanic ritual abuse, which eliminated any doubts that she had as to her diagnosis through the institutionalized nature of Charter's therapy.

From August 21, 1991 until August 26, 1991, plaintiff was admitted to CPC Parkwood Hospital ("Parkwood"). Plaintiff alleges that Parkwood negligently accepted the admission diagnosis of Dr. Ulrici and the other defendants without performing available and competent tests to independently establish the nature of plaintiff's mental condition.

From December 1991 until February 1992, plaintiff was again hospitalized at Charter and underwent the same treatment as during previous hospitalizations.

Subsequently, plaintiff intentionally cut herself, requiring 40 stitches. She was hospitalized at Parkwood from August 5, 1992 until September 3, 1992, and then again from October 8, 1992 until October 12, 1992.

In November 1992, plaintiff began work as a full-time nanny for Dr. Elizabeth Goey until August 1994. From August 1994 until December 1994, plaintiff worked full-time as a nanny for Ms. Lauretta Russell.

From August 17, 1994 until August 19, 1994, plaintiff was again hospitalized at Parkwood. However, other than such hospitalization, plaintiff had no further treatment or clinical care from the defend-

ants-appellants, except Dr. Ulrici. In February 1995, plaintiff discontinued her treatment with Dr. Ulrici.

On November 25, 1995, plaintiff filed her original complaint alleging medical malpractice in misdiagnosing and treating her. On March 25, 1996, plaintiff filed her amended complaint against the defendants and added Parkwood. The defendants-appellants filed their motions for summary judgment based upon the running of the statute of limitation. The trial court entered an order denying all summary judgment motions. The defendants-appellants applied for a discretionary appeal which was applied for and granted. Dr. Ulrici did not seek a discretionary appeal.

All the defendants-appellants, in various ways, contend that the trial court erred in not finding that the statute of limitation barred plaintiff's action against them. We agree that summary judgment on the running of the statute of limitation should have been granted to the defendants-appellants as to injuries arising on or before October 12, 1992.

(a) OCGA § 9-3-70 (1) and (2) defines an "action for medical malpractice" so broadly for purposes of the statute of limitation that the defendant medical doctors, psychologists, mental hospitals, and the dietician all come within the act. See *Bradway v. American Nat. Red Cross*, 263 Ga. 19 (426 SE2d 849) (1993); *Zechmann v. Thigpen*, 210 Ga. App. 726, 727 (1) (437 SE2d 475) (1993); *Allrid v. Emory Univ.*, 166 Ga. App. 130, 131 (1) (303 SE2d 486) (1983), aff'd, 251 Ga. 367 (306 SE2d 905) (1983). OCGA § 9-3-71 (a) mandates that a medical malpractice action must be brought "within two years after the date on which an injury . . . arising from a negligent or wrongful act or omission occurred."

In this case, plaintiff's alleged misdiagnosis and treatment, including the representations that she had been sexually abused by a family member and that the sexual abuse was part of a satanic ritual, were injuries that occurred and became manifested at the same time of the defendant's acts or omissions, were manifested prior to the running of the statute. Plaintiff in her complaint and amended complaint seeks to recover for mental pain and suffering from the inception of the misdiagnosis and treatment, as well as for special damages for unnecessary, improper treatment and hospitalizations, which means that damages, i.e., general, special, or nominal, occurred and became manifested at the time of the misdiagnosis. See *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984); *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (194 SE2d 425) (1972); *Oxley v. Kilpatrick*, 225 Ga. App. 838, 839-840 (486 SE2d 44) (1997), rev'd on other grounds, *Rossi v. Oxley*, 269 Ga. 82 (495 SE2d 39) (1998).

"In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sus-

tained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. [Cit.] The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. [Cit.]" *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) (1988); see *Jones v. Lamon*, 206 Ga. App. 842, 846 (1) (426 SE2d 657) (1992); *Stone v. Radiology Svcs., P. A.*, 206 Ga. App. 851, 852 (426 SE2d 663) (1992). Thus, in this case, plaintiff suffered mental pain and suffering from the inception of the misdiagnosis, if not physical pain and suffering as well, and special damages from the alleged needless hospitalizations and therapy sessions. This is not a situation where the injury was concealed but was revealed to plaintiff at the time of the act or omission by the disclosure of the diagnosis to her, because the consequences to plaintiff were ascertainable and known to her from the inception of the wrongful acts or omissions, whether or not she appreciated the medical cause. *Allrid v. Emory Univ.*, 249 Ga. 35, 36 (285 SE2d 521) (1982); *Everhart v. Rich's, Inc.*, supra at 802; *Bryant v. Crider*, 209 Ga. App. 623 (434 SE2d 161) (1993).

While plaintiff may have later learned that defendant's diagnosis and treatment was made in error, causing her mental pain and suffering at that time in 1995, plaintiff and plaintiff alone was always in the unique position of knowing from the commencement of treatment and the alleged misdiagnosis (despite the suggestions, hypnosis, or influence of the defendants) whether she had been sexually abused by a family member and if the abuse came from satanic practices, as evidenced by the fact that she later came to reject such diagnosis. Plaintiff had mental suffering at the time of the misdiagnosis in 1990 from the belief that she had a MPD and had been abused as a child by family members during satanic rituals; at that time, she suffered isolation and alienation from her family as a consequence of the misdiagnosis and therapy.

Damages, i.e., manifested compensable injuries, whether general, special, or nominal damages, begin the running of the statute of limitation in misdiagnosis cases, and the failure to know the medical cause of the damage until later does not give rise to the application of the "discovery rule," where damages occurred concurrently with the wrongful acts or omission so that the cause of action then accrued. OCGA § 9-3-71 (a); *Ford v. Dove*, 218 Ga. App. 828, 831 (3) (463 SE2d 351) (1995); *Henry v. Medical Center*, 216 Ga. App. 893, 894 (2) (456 SE2d 216) (1995); *Crawford v. Spencer*, 217 Ga. App. 446, 448 (3) (457 SE2d 711) (1995); *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994); *Bryant v. Crider*, supra at 626 (3); *Jones v. Lamon*, supra at 846. Thus, there was no subsequent discovery of the injury; plaintiff always was aware of the injury and only later came to reject the diagnosis and treatment as false. See *Henry v. Medical Center*,

supra at 894; *Crawford v. Spencer*, supra at 448; *Whitaker v. Zirkle*, supra.

(b) The "continuing tort" theory is inapplicable to actions for medical malpractice, since it would nullify the intent of the General Assembly that, after five years, no medical malpractice action could be brought, even when a disability attaches to toll the running of the statute because the statute of repose abolishes any action five years after the negligent or wrongful act or omission. OCGA § 9-3-71; *Crawford v. Spencer*, supra; see also *Ford v. Dove*, supra at 829 (2); *Hickey v. Askren*, 198 Ga. App. 718, 720-721 (2) (403 SE2d 225) (1991). OCGA § 9-3-71 (b) creates a statute of repose so that no cause of action for medical malpractice exists five years after the negligent or wrongful act or omission; the right of action is abrogated by statute as if it never existed. See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657 (437 SE2d 308) (1993).

If the injury, i.e., damage, is not manifested so that it is discoverable until two or more years after the negligent or wrongful act or omission, then under the plain meaning of OCGA § 9-3-71 (a), the statute of limitation does not commence to run until an injury is manifested, i.e., discovery or reasonable opportunity for discovery of the injury. The tort does not accrue until there are damages, i.e., injury or death, to commence the running of the statute of limitation. See *Clark v. Singer*, 250 Ga. 470, 471 (298 SE2d 484) (1983); *Screven v. Drs. Gruskin & Lucas, P.C.*, 227 Ga. App. 756, 758 (490 SE2d 422) (1997); *Oxley v. Kilpatrick*, supra at 839-840. Discovery should occur when damages first become manifest; without damages, no tort action accrues in order to commence the running of the statute of limitation. *Shessel v. Stroup*, supra at 57; *Everhart v. Rich's, Inc.*, supra at 802; *Screven v. Drs. Gruskin & Lucas, P.C.*, supra at 758; *Oxley v. Kilpatrick*, supra at 839-840; *Whitaker v. Zirkle*, supra; accord *Staples v. Bhatti*, 220 Ga. App. 404, 406 (469 SE2d 490) (1996); *Knight v. Sturm*, 212 Ga. App. 391 (442 SE2d 255) (1994); *Zechmann v. Thigpen*, supra at 728-729 (3); *Vitner v. Miller*, 208 Ga. App. 306, 307 (430 SE2d 671) (1993). "Georgia courts have consistently held that in a continuing tort a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof. [Cits.]" *Waters v. Rosenbloom*, 268 Ga. 482, 483 (2) (490 SE2d 73) (1997).

Whether by discovery, which delays the accrual of the action, or by infancy, incompetency, or fraud, which may toll the statute of limitation for up to five years, however, nothing stops the abrogation of the action by the statute of repose; five years after the negligent or wrongful act or omission occurred, despite any non-discovery or any tolling, the medical malpractice action or potential action ceases to exist by abrogation of law under the statute of repose. OCGA §§ 9-3-

71 (b); 9-3-73 (c); *Waters v. Rosenbloom*, supra at 483-484; *Crowe v. Humana, Inc.*, 263 Ga. 833 (1) (439 SE2d 654) (1994); *Craven v. Lowndes County Hosp. Auth.*, supra at 660 (2); *Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993); *Kumar v. Hall*, 262 Ga. 639 (423 SE2d 653) (1992); *Smith v. Cobb County-Kennestone Hosp. Auth.*, 262 Ga. 566, 572 (3) (423 SE2d 235) (1992); *Zechmann v. Thigpen*, supra at 729-730; *Lasoya v. Sunay*, 193 Ga. App. 814, 815 (1) (389 SE2d 339) (1989); *Whitaker v. Zirkle*, supra at 707 (1).

(c) To toll the running of the statute of limitation by fraud or concealment, plaintiff must present evidence to show such concealment or fraud by each defendant against whom such tolling is sought to apply. *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278, 280-281 (2) (306 SE2d 366) (1983); *Hamilton v. Mitchell*, 165 Ga. App. 717, 718 (302 SE2d 589) (1983). Even where the plaintiff can show actual fraud exists, if plaintiff knew all of the facts necessary to show malpractice prior to the running of the statute, then such knowledge will prevent the statute from being tolled. *Lasoya v. Sunay*, supra at 816-817 (3); *Hendrix v. Schrecengost*, 183 Ga. App. 201 (358 SE2d 486) (1987); *Hamilton v. Mitchell*, supra at 719.

The conduct of Dr. Ulrici cannot be imputed to any defendant-appellant for purposes of tolling the statute of limitation; whether the defendants-appellants and Dr. Ulrici acted "in concert" or "sequentially and/or concurrently," each defendant-appellant must be shown to have individually made fraudulent misrepresentations or intentionally concealed the existence of a cause of action to toll the running of the statute as to such defendant-appellant.

The fraud that tolls the running of the statute of limitation must be actual and not constructive and is that fraud which deters or debars the bringing of the action. See *Wade v. Thomasville Orthopedic Clinic,* supra at 280-281 (2); *General Tire &c. Co. v. Alex*, 149 Ga. App. 393, 394 (254 SE2d 509) (1979); see also OCGA § 9-3-96. Fraud under OCGA § 9-3-96 requires that "plaintiff has been debarred or deterred from bringing an action." This statute has three elements: (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the existence of the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) plaintiff exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation. *Jim Walter Corp. v. Ward*, 245 Ga. 355 (265 SE2d 7) (1980).

The key element for such tolling to apply is that the fraud must have debarred or deterred plaintiff from bringing the suit timely. *General Tire &c. Co. v. Alex*, supra at 394-395. The fraud must conceal the cause of action and cut plaintiff off from suing, preclude him, hinder him, shut him out, or exclude him to debar him from bringing

suit for purposes of suspension of the running of the statute of limitation. *Haynesworth v. Hall Constr. Co.*, 44 Ga. App. 807, 816 (2) (163 SE 273) (1932). Some trick or artifice must be employed to prevent inquiry, elude investigation, or mislead and hinder the plaintiff from obtaining information necessary to reveal the existence of a cause of action. *Blalock v. Anneewakee, Inc.*, 206 Ga. App. 676, 679 (2) (426 SE2d 165) (1992); *Kerce v. Bent Tree Corp.*, 166 Ga. App. 728, 729 (305 SE2d 462) (1983); *Union Circulation Co. v. Trust Co. Bank*, 146 Ga. App. 612, 613 (1) (247 SE2d 197) (1978); *Clinton v. State Farm &c. Ins. Co.*, 110 Ga. App. 417, 421-422 (1) (138 SE2d 687) (1964); *Middleton v. Pruden*, 57 Ga. App. 555, 557-559 (196 SE 259) (1938).

If the underlying cause of action is based upon constructive fraud, negligence, or breach of contract, then an independent act of actual fraud or intentional concealment must also exist that debars and deters plaintiff from suit on the underlying action; but if the underlying action is for actual fraud, then the statute of limitation begins to run from discovery of the fraud or when the fraud should have been discovered in the exercise of due diligence, absent a confidential relationship that justifies reliance. *Shipman v. Horizon Corp.*, 245 Ga. 808, 809 (267 SE2d 244) (1980); *Metlife v. Wright*, 220 Ga. App. 827, 828 (1) (470 SE2d 717) (1996); *Middleton v. Pruden*, supra at 557-559. Mere silence is not enough to establish actual fraud that tolls the statute; there must be a positive affirmative act to conceal the existence of the cause of action. *Shipman v. Horizon Corp.*, supra at 809; *Stephens v. Walker*, 193 Ga. 330, 332 (2) (18 SE2d 537) (1942); *Comerford v. Hurley*, 154 Ga. App. 387, 388 (268 SE2d 358) (1980).

However, where there is a confidential relationship and where there is a duty to disclose or the right in the plaintiff to expect full communication of the facts, concealment per se or intentional silence amounts to actual fraud that tolls the statute. *Zechmann v. Thigpen*, supra at 730 (5); *Southern Feed Stores v. Sanders*, 193 Ga. 884, 888 (4) (20 SE2d 413) (1942); *Lasoya v. Sunay*, supra at 815 (1); *Morris v. Johnstone*, 172 Ga. 598 (158 SE 308) (1931); *Comerford v. Hurley*, supra at 388. "The physician-patient relationship is a confidential one and silence or failure to disclose what should be said or disclosed can amount to fraud"; however, there must be evidence that there was an *intent* to conceal by silence or that the representations were false when made and were *intended* to mislead. *Lynch v. Waters*, 256 Ga. 389, 390 (349 SE2d 456) (1986); accord *Beck v. Dennis*, 215 Ga. App. 728, 729 (452 SE2d 205) (1994). The physician- or psychologist-patient relationship is a confidential relationship that requires disclosure of facts that would give rise to a cause of action, and the intentional failure to do so is concealment that tolls the statute. *Zechmann v. Thigpen*, supra at 730 (5); *Lasoya v. Sunay*, supra at 815 (1); *Breedlove v. Aiken*, 85 Ga. App. 719, 720-721 (70 SE2d 85) (1952).

Where such confidential relationship exists, the plaintiff has the right to rely upon what her physician tells her, and an intentional failure to disclose will toll the statute if the intent to conceal or to remain silent is shown. *Hill v. Fordham*, 186 Ga. App. 354, 355 (1) (367 SE2d 128) (1988); *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773-774 (278 SE2d 653) (1981). There must be evidence that each health care provider *intentionally* withheld information as to the wrongful conduct in order to toll the statute of limitation. *Zechmann v. Thigpen*, supra at 730 (5); *Lasoya v. Sunay*, supra at 815 (1); *Hendrix v. Schrecengost*, supra at 202 (1).

In this case, there is no evidence that the defendants-appellants knew that there was a misdiagnosis prior to the lawsuit or intended to conceal anything from the plaintiff that would give her a cause of action. *Craven v. Lowndes County Hosp. Auth.*, supra at 660 (3); *Lasoya v. Sunay*, supra at 816 (1); *Hendrix v. Schrecengost*, supra at 203 (1). "A mere misdiagnosis 'is insufficient to raise an issue of fraud.' [Cit.]" *Hendrix v. Schrecengost*, supra at 203; accord *Craven v. Lowndes County Hosp. Auth.*, supra at 660.

Thus, if the defendant never learns or has no reason to believe that there has been a misdiagnosis, then there can be no concealment, because there must be the actual intent to mislead or to conceal, involving moral turpitude. *Blalock v. Anneewakee, Inc.*, supra at 678; *Craven v. Lowndes County Hosp. Auth.*, supra at 660; *Hendrix v. Schrecengost*, supra at 202 (1); *Stephens v. Walker*, supra; *Morris v. Johnstone*, supra; *Middleton v. Pruden*, supra.

In a medical malpractice action for misdiagnosis, the fraud that plaintiff must show to toll the statute of limitation is an intentional failure to reveal negligence. *Rowell v. McCue*, 188 Ga. App. 528 (373 SE2d 243) (1988). Notwithstanding the confidential relationship between physician and patient and the resultant lessened duty of diligence on the plaintiff, if the alleged fraud did not prevent the plaintiff from learning of defendant's alleged negligence, then the statute is not tolled. *Craven v. Lowndes County Hosp. Auth.*, supra at 660; *Hendrix v. Schrecengost*, supra at 202 (1); *Hamilton v. Mitchell*, supra at 719.

In this case, plaintiff knew the facts of her past; knew that Dr. Ulrici diagnosed her as having a MPD, with childhood sexual abuse in conjunction with satanic rituals; and knew that she was treated based upon such diagnosis. Plaintiff chose to believe and to act on such opinions and to allow treatment. *Hamilton v. Mitchell*, supra at 719. Thus, plaintiff was not debarred or deterred from knowing that she had a cause of action for an alleged misdiagnosis by defendants-appellants' acts or omissions. Plaintiff subsequently came to believe that the earlier diagnosis was incorrect; both positions were based upon the same knowledge in her possession, but were interpreted in

different ways. Plaintiff chose to believe and to rely upon different experts with different opinions. Fraud did not operate to toll the running of the statute of limitation as to any defendant-appellant. *Wade v. Thomasville Orthopedic Clinic*, supra at 281-282.

(d) OCGA § 9-3-73 (b) ("persons who are legally incompetent because of mental retardation or mental illness") and OCGA § 9-3-90 (a), when construed in pari materia, have the same meaning and require a plaintiff to be "mentally incompetent" during the period of tolling of the statute of limitation. *Kumar v. Hall*, supra at 643-644 (1). The General Assembly in passing such Code sections did not intend to change the prior law by modernizing the statutory language from "insane persons" as used in Ga. Code Ann. § 3-801. "[M]ental incapacity is included within insanity as used in Code Ann. § 3-801. . . . We find that the enactment of the Official Code of Georgia did not change the preexisting meaning of the predecessor of § 9-3-90. [Cits.]" (Punctuation omitted.) Id. at 643. The general tolling provisions of OCGA § 9-3-90 do not apply to medical malpractice actions, because OCGA § 9-3-73 (b) applies instead. Id. at 643-644.

In determining whether to apply the tolling provisions, under OCGA § 9-3-73 (b), the test for mental incompetence is: " 'Is his mind so unsound, or is he so weak in his mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?' " *Mayor &c. of Athens v. Schaefer*, 122 Ga. App. 729, 730 (178 SE2d 764) (1970). Mental incapacity that tolls the statute is the unsound mind that renders the plaintiff incapable of acting for him or herself in order to carry on her business, to undertake or maintain a suit for the recovery of her property, to prosecute her claim, and to manage the ordinary affairs of life. *Lawson v. Glover*, 957 F2d 801 (11th Cir. 1987); see *Lowe v. Pue*, 150 Ga. App. 234 (257 SE2d 209) (1979); *Cline v. Lever Bros. Co.*, 124 Ga. App. 22, 23 (4) (183 SE2d 63) (1971); *Barnett v. Ashley*, 89 Ga. App. 679, 682 (1) (81 SE2d 11) (1954); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377, 380 (1) (18 SE2d 57) (1941).

For purposes of summary judgment, plaintiff's claim of incompetency to function on a day-to-day basis so as to toll the statute may be rebutted by plaintiff's own testimony to the contrary, showing that there is no factual dispute as to competency. *Hickey v. Askren*, supra at 719-721 (2). While plaintiff may have been mentally ill, even assuming the alleged misdiagnosis was correct that plaintiff suffered from MPD and an eating disorder, plaintiff's testimony did not show that she was incapable of carrying out her day-to-day life activities and making decisions, even though she was hospitalized for treatment. The record shows that she did, with some emotional difficulty, carry on her daily ability to make decisions. She had the mental capacity to voluntarily admit herself for treatment and to be dis-

charged from hospitals. Plaintiff was not legally incompetent within the meaning of OCGA § 9-3-73 (b) so as to toll the statute of limitation.

(e) For purpose of determining when an injury from a misdiagnosis occurred as the consequence of acts or omissions of the defendants, each defendant's acts or omissions must be separately analyzed and determined as concurring in the cause of the original injury or in aggravation of such injury; where the acts or omissions of the defendants concurrently caused an indivisible injury or aggravated a pre-existing injury, the statute begins to run for each such defendant at the time the injury occurred from the tort and manifests any damages or at the date the injury was subsequently aggravated by each defendant's acts or omissions. See generally *Stone v. Radiology Svcs., P. A.,* supra at 852 (2); *Jones v. Lamon,* supra at 844-846; *Gay v. Piggly Wiggly Southern,* 183 Ga. App. 175, 178-180 (2) (358 SE2d 468) (1987). In the case of a misdiagnosis that does not manifest any damages at the time of the act or omission, but does result in damages at a later time, the statute of limitation commences to run upon discovery of the damages. *Shessel v. Stroup,* supra at 56; *Staples v. Bhatti,* supra at 406; *Knight v. Sturm,* supra at 391; *Vitner v. Miller,* supra at 307; *Whitaker v. Zirkle,* supra. However, the subsequent act or omission of a tortfeasor causing subsequent injury does not extend the statute of limitation to such subsequent injury for other tortfeasors, because such subsequent act or omission is an independent tortious act aggravating a pre-existing injury. See *Jones v. Lamon,* supra at 846. But, if the subsequent tortious act brings about the indivisible injury where no injury previously existed, i.e., the straw that broke the camel's back, then all previous tortfeasors would be joint tortfeasors in the discovered and manifested injury. See *Whitaker v. Zirkle,* supra. However, in this case, the damages accrued concurrently with the alleged wrongful conduct, not subsequently.

In this case, plaintiff suffered special damages, as well as general damages or at least nominal damages, at the date of the alleged misdiagnosis by Dr. Ulrici. Therefore, any damages sustained by the plaintiff between October 12, 1992, and February 1995, when plaintiff discharged Dr. Ulrici, were further aggravation of a pre-existing injury, affecting the statute of limitation as to Dr. Ulrici only.

Absent a partnership, the joint treatment of a patient by health care providers does not create a joint venture as a matter of public policy, allowing the wrongful conduct of one health care provider to be imputed to another health care provider. *Rossi v. Oxley,* supra. Separate from public policy considerations, absent joint right of control and sharing of profits and losses, a joint venture cannot legally exist between health care providers. Id. at 82-83.

(f) Charter and Parkwood had a duty to supervise only employ-

ees and agents; such hospitals had no duty to supervise independent contractors, doctors with staff privileges, who were not employees, i.e., psychiatrists and psychologists. See *Allrid v. Emory Univ.*, supra at 39-40 (2); *Ga. Osteopathic Hosp. v. Hollingsworth*, 242 Ga. 522 (250 SE2d 433) (1978); *Hodges v. Doctors Hosp.*, 141 Ga. App. 649, 651 (234 SE2d 116) (1977). "The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Hodges v. Doctors Hosp.*, supra at 651; accord *Allrid v. Emory Univ.*, supra at 39-40; *Murphy v. Clayton County Hosp.*, 175 Ga. App. 152, 153 (1) (333 SE2d 15) (1985); *Clary v. Hosp. Auth. &c. of Marietta*, 106 Ga. App. 134, 135 (1) (126 SE2d 470) (1962). Where a " 'hospital reserve(s) no right to control specific medical techniques employed by the . . . doctors, but merely exercise(s) a limited surveillance in order to monitor the quality of medical care provided,' these controls are not inconsistent with an employer-independent contractor relationship. *Overstreet v. Doctors Hospital*, 142 Ga. App. 895, 897 (237 SE2d 213) (1977)." *Allrid v. Emory Univ.*, supra at 40.

The acts or omissions of Dr. Ulrici "in concert" or "sequentially and/or concurrently" with Charter and Parkwood did not impute her subsequent conduct after October 12, 1992 to Charter and Parkwood so as to extend or toll the statute of limitation as to them, because they were not liable for her acts or omissions as an agent or employee.

*Judgment reversed. McMurray, P. J., concurs. Blackburn, J., concurs in judgment only.*

DECIDED JULY 15, 1998 —

*Alston & Bird, Lawrie E. Demorest, Cari K. Dawson*, for appellants (case no. A98A1503).

*Goldner, Sommers, Scrudder & Bass, Stephen L. Goldner, Henry E. Scrudder, Jr., Linda J. Pollock*, for appellant (case no. A98A1504).

*Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Daniel J. Huff, Cameron P. Turner*, for appellant (case no. A98A1505).

*Downey & Cleveland, Y. Kevin Williams, W. Curtis Anderson*, for appellant (case no. A98A1506).

*Goetz, Tibbs & Zahler, Charles M. Goetz, Jr., Philippa V. Tibbs, Scott M. Zahler*, for appellee.