## A02A2138. LUEM et al. v. JOHNSON.
(574 SE2d 835)

PHIPPS, Judge.

On September 3, 1999, Kelly Johnson brought this medical malpractice action against Dr. Carl Luem and his professional corporation, the North Georgia Women's Clinic, P.C. (NGWC). Johnson claims that on November 29, 1994, Luem misdiagnosed her condition as severe pelvic and left ovarian endometriosis, with the result that he negligently performed a total abdominal hysterectomy and bilateral salpingo-oophorectomy (total hysterectomy) on her at a time when she was of childbearing years and suffered no condition requir-

ing such a procedure. She also complains that Luem's failure to remove all of her left ovary at the time of the hysterectomy necessitated another surgical procedure on September 29, 1998.

Luem and NGWC moved for partial summary judgment, arguing that Johnson's claims that Luem negligently diagnosed her condition and needlessly performed the hysterectomy are barred by the two-year medical malpractice statute of limitation. The trial court denied the motion. We granted Luem's and NGWC's application for interlocutory appeal, and, because we find that the claims are time-barred, we reverse.

Viewed in the light most favorable to Johnson, the evidence shows that Johnson had a left ovarian cyst removed in 1985. On or about November 3, 1994, she consulted Luem because of severe pain in her left abdominal region resulting from another left ovarian cyst. She complained of painful menstrual cycles, severe left lower quadrant pain upon intercourse, and other related symptoms from the left ovarian cyst.

Luem diagnosed Johnson's left ovarian cyst as being accompanied with probable endometriosis. He advised Johnson of the methods of treatment, including the possible need for a total hysterectomy (in which both ovaries are removed, thereby resulting in infertility). Johnson consented to undergo an abdominal laparoscopy, as well as a hysterectomy if Luem determined that it was necessary to give her definitive relief from the conditions that were causing her pain and recurring ovarian cysts. Upon performing the abdominal laparoscopy on November 29, 1994, Luem diagnosed endometriosis and performed the total hysterectomy.

Johnson felt better after the surgery, and there was no recurrence of the pain and problems she had suffered prior to surgery until June 1998, when she again experienced symptoms of pain in the lower quadrant. In September 1998, Johnson began receiving treatment from doctors other than Luem. On or about September 22, 1998, Johnson underwent a CT scan that indicated a small growth in the left pelvic area with a walled-off abscess and inflammation in the area. On September 29, Johnson underwent an exploratory laparoscopy. A growth was removed that was revealed to be a portion of her left ovary that had not been removed when Luem performed the total hysterectomy in November 1994.

Johnson then consulted a medical expert to review a videotape of the surgery in which Luem had performed the hysterectomy. During this review, the expert determined that Johnson had not suffered from endometriosis when she underwent the total hysterectomy and that the procedure had been unnecessary. Johnson's medical expert also found that the pathology report from the hysterectomy revealed no evidence of endometriosis.

In denying partial summary judgment to Luem and NGWC, the

trial court ruled that under the "discovery rule," as adopted by the Supreme Court of Georgia in *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*,[1] Johnson's claims relating to Luem's negligence in diagnosing her condition and performing the total hysterectomy are not time-barred. As recognized in *Lumbermen's*, the discovery rule provides that "a plaintiff's cause of action does not accrue, and the statute of limitations does not commence to run, until he knew, or through the exercise of reasonable diligence should have discovered, not only the nature (identity) of his injury but also the causal connection between the injury and the alleged negligent conduct of the defendant."[2] As found by the trial court, Johnson did not know the causal relationship between her injury (i.e., her infertility) and Luem's breach of duty (i.e., misdiagnosis of Johnson's condition as endometriosis) until after the September 1998 surgery.

1. The "discovery rule" was initially adopted by this court in *King v. Seitzingers, Inc.*[3] *King* dealt with the general tort statute of limitation, OCGA § 9-3-33, generally requiring actions for injuries to the person to be brought within two years "after the right of action accrues." *King* recognized:

> "There are at least four points at which a tort cause of action may accrue: ([i]) When the defendant breaches his duty; ([ii]) when the plaintiff suffers harm; ([iii]) when the plaintiff becomes aware of his injury; and ([iv]) when the plaintiff discovers the causal relationship between his harm and the defendant's misconduct. [Cits.]" [Cit.][4]

In keeping with "the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights,"[5] Georgia cases preceding *King* had held that "a tort cause of action does not accrue unless the plaintiff knows or with reasonable diligence should have known that he suffered an injury."[6] In cases in which this law was applied, the cause of the injury was apparent at the time the nature of the injury was discovered.[7] That was not, however, the situation in *King*, where the plaintiff was diagnosed with lead poisoning and later was told that it had resulted from his exposure to lead fumes at his workplace years earlier. The plaintiff filed suit more than two years after being informed of his diagnosis but

---

[1] 254 Ga. 461 (330 SE2d 344) (1985).
[2] Id. at 463.
[3] 160 Ga. App. 318 (287 SE2d 252) (1981).
[4] Id. at 319.
[5] *Urie v. Thompson*, 337 U. S. 163, 170 (69 SC 1018, 93 LE 1282) (1949).
[6] *King*, supra at 320.
[7] Id.

within two years after being told of the causal connection between the diagnosis and his workplace exposure. *King* held that it was a "logical extension of the existing Georgia law" to adopt the rule that "[plaintiff's] cause of action did not accrue and the statute of limitation did not run against him until he knew or through the exercise of reasonable diligence should have discovered not only the nature of his injury but also the causal connection between the injury and the alleged negligent conduct of [defendant]."[8]

*Lumbermen's*[9] dealt with OCGA § 9-3-30, which requires actions for damage to realty to be brought "within four years after the right of action accrues." The question was whether the "discovery rule," as applied in *King* to a personal injury action under OCGA § 9-3-33, should also be applied to property damage cases under OCGA § 9-3-30. Although a plurality of the Supreme Court answered this question in the affirmative in *Lumbermen's*, a majority of the Court later held in *Corp. of Mercer Univ. v. Nat. Gypsum Co.*[10] that the discovery rule of *King* is confined to cases of bodily injury which develop over an extended period of time.

*Shessel v. Stroup*[11] involved OCGA § 9-3-71, a statute of limitation enacted in 1976 generally requiring actions for medical malpractice to be brought "within two years after the date on which the negligent or wrongful act occurred." *Shessel* presented a situation in which the alleged negligent act constituting medical malpractice produced no injury until more than two years after the alleged negligence occurred. Noting that "[t]he general tort limitation begins only when the action 'accrues' and that is no sooner than the date of the injury and perhaps no sooner than the date of discovery,"[12] *Shessel* held that "OCGA § 9-3-71 is a denial of equal protection and therefore unconstitutional as applied to personal injury claims in which injury occurs more than two years after the negligent or wrongful act or omission occurred."[13]

In 1985, the year after *Shessel* was decided, the General Assembly amended the medical malpractice statute of limitation to provide that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."[14]

*Jones v. Lamon*[15] was a medical malpractice case in which the plaintiffs brought suit more than two years after the occurrence of

---

[8] Id.
[9] Supra.
[10] 258 Ga. 365, 366 (1) (368 SE2d 732) (1988).
[11] 253 Ga. 56 (316 SE2d 155) (1984).
[12] Id. at 58.
[13] Id. at 59.
[14] OCGA § 9-3-71 (a).
[15] 206 Ga. App. 842 (426 SE2d 657) (1992).

the patient's injury but within two years after learning of the causal connection between such injury and the doctor's negligence. Plaintiffs submitted an affidavit in which their expert testified that they could not have known that there was a causal connection between the injury and the doctor's negligence based solely on occurrence of the injury.

By asserting that the limitation period for the patient's medical malpractice claim did not begin to run until the date she discovered the cause of her injury, the plaintiffs in *Jones* sought to have this court engraft onto OCGA § 9-3-71 (a) the "discovery rule" applied to the general tort statute of limitation in *King*.[16] They argued that the legislature was compelled by *Shessel* to abandon its attempt to classify medical malpractice claims separate from general tort claims for statute of limitation purposes.[17]

The *Jones* plurality rejected this argument, noting that

> when the *Shessel* court held the 1976 version of OCGA § 9-3-71 to be unconstitutional, the Supreme Court was not focused on the differences among points II, III, and IV, all of which involve the varying times at which the injury affects a plaintiff, because those differences were not in issue. Instead, the *Shessel* court focused on the difference between a limitation period that commenced on the date of a defendant's breach of a duty (point I) rather than on the date of an injury to the plaintiff (points II, III, and IV).[18]

The *Jones* plurality concluded that "[t]he plain language in OCGA § 9-3-71 (a) that the statute of limitation in a medical malpractice action begins to run on the date 'on which an injury . . . arising from (an act of malpractice) occurred' would seem to support the conclusion that the limitation period commences to run on the date of the injury, i.e., point II."[19]

A special concurrence in *Jones* expressed the opinion that the medical malpractice statute of limitation, as amended in 1985, begins to run either at point II (occurrence of the injury) or at point III (discovery of the injury), but not at point IV (discovery of the causal relationship between the injury and defendant's breach of duty).

Consequently, a majority of this court in *Jones* held that the discovery rule cannot be applied to Georgia's current medical malpractice statute of limitation, even in a case in which the plaintiff could

---

[16] Id. at 843-844 (1).
[17] Id. at 844.
[18] Id. at 845 (1).
[19] Id. at 846.

not reasonably be expected to have known that her legal rights had been invaded until she discovered the causal relationship between the doctor's negligence and her injury. Although the result seems unfair, *Jones* constitutes binding authority that such result is mandated by the language of our medical malpractice statute of limitation and is not unconstitutional.

2. In her claim against Luem for failing to remove all of her left ovary at the time of the hysterectomy, Johnson seeks to recover for injuries which occurred subsequent to Luem's performance of the hysterectomy. "'When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered.' "[20]

As recognized in *Williams v. Devell R. Young, M.D., P.C.*,[21] "[t]he rule that the injury 'occurs' when its symptoms manifest themselves to the patient applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission. [Cits.]" To alleviate the "harsh result" this rule can create, the majority in *Williams* adopted the "continuous treatment" doctrine.[22] Our Supreme Court, however, granted certiorari in *Williams* and reversed the Court of Appeals' decision, holding that the continuous treatment doctrine "is more appropriately incorporated into a statute of limitation that commences upon occurrence of the negligent act. [Cits.]"[23] This bolsters *Jones*'s conclusion that Georgia's current medical malpractice statute of limitation begins to run upon occurrence or discovery of the injury even where, as here, plaintiff's lack of awareness of the causal relationship between the injury and defendant's breach of duty effectively precludes her from bringing suit at that time.

For these reasons, the trial court's denial of Luem's and NGWC's motion for partial summary judgment must be reversed.[24]

---

[20] (Footnote omitted.) *Walker v. Melton*, 227 Ga. App. 149, 151 (1) (b) (489 SE2d 63) (1997).

[21] 247 Ga. App. 337, 339 (543 SE2d 737) (2000).

[22] Id. at 340. As stated in *Williams*:

The continuing treatment doctrine provides: "If the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuous treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated -- unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive. [Cit.]"

Id. at 340-341.

[23] *Young v. Williams*, 274 Ga. 845, 846 (560 SE2d 690) (2002).

[24] As a final matter, we note that in cases such as this, the statute of limitation is tolled if there is evidence of fraud by the physician in intentionally failing to reveal a negligent diagnosis. See *Charter Peachford &c. v. Kohout*, 233 Ga. App. 452, 459 (504 SE2d 514) (1998) (physical precedent only). The trial court ruled that there is no such evidence here, and Johnson does not challenge this ruling.

*Judgment reversed. Mikell, J., concurs. Andrews, P. J., concurs in the judgment only.*

DECIDED NOVEMBER 21, 2002.

*Clifton, Sanders & Smith, Janney E. Sanders*, for appellants.
*Douglas L. Henry*, for appellee.